**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

**THE COMMUNITY HOUSE ASSOCIATION,**
**BIRMINGHAM, MICHIGAN,**

      Debtor.

Case No. 26-43351
Chapter 11
Hon. Thomas J. Tucker

---

## DECLARATION OF ALISON GAUDREAU IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS

I, Alison Gaudreau, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, declare the following to the best of my knowledge, information and belief:

1. I am the president of The Community House Association, Birmingham, Michigan ("Debtor" or "The Community House Association"), a nonprofit corporation based in Birmingham, Michigan. On behalf of the Debtor, I signed a voluntary petition under chapter 11 of the United States Bankruptcy Code and authorized the filing of the petition on March 26, 2026 (the "Petition Date") with this Court after authorization from the Board of Directors.

2. I submit this Declaration on behalf of the Debtor to assist the Court and interested parties in understanding the background of the Debtor and its operations, as well as the circumstances that resulted in the Chapter 11 filing. I further submit this

Declaration in support of the first day motion filed at or shortly after commencement of this Chapter 11 case (the "First Day Motion"). If called to testify, I could and would testify competently to the facts set forth herein.

3.	Except as otherwise indicated, I am generally familiar with each of the matters set forth below based on (a) my personal knowledge, (b) my review of the Debtor's relevant business records, (c) information supplied to me by the others employed by Debtor or (d) my opinion based upon my knowledge of the Debtor's operations and financial condition.

4.	Nothing herein is intended to be or should be construed as an admission of the validity of claims, security interests, liens, contractual defaults or any other rights that may be asserted against the Debtor.  The statements made herein regarding debts, obligations and claims represent a summary of those assertions made by creditors or other interested parties, and do not necessarily constitute a belief on the part of the Debtor that these assertions are true and/or accurate.

**Overview of Debtor**

5.	The Community House Association is a Michigan nonprofit corporation formed in 1923. The Community House Association's mission is to impact lives through exceptional educational, cultural and social experiences that provide the means to fund programs that help others.

6. In 1920, Reverend Charles Haden McCurdy of St. James Episcopal Church appointed a committee to reorganize the St. James Women's Guild and draft the bylaws for a new "community house" organization that would be run by members of the St. James Women's Guild to serve the public. The Organization was incorporated in 1927 as the Birmingham Community House Association. In 1930, the Community House building at 380 S. Bates Street was opened to the public. Over time, the organization's name was simplified to "The Community House Association" to reflect its intention that the nonprofit's good works extend beyond Birmingham residents. That name first appears in Article of Incorporation in 1962. In 1999, The Community House Association board amended its Articles of Incorporation to expand its purpose to include making distributions to qualified 501(c)(3) nonprofit organizations.

7. The Community House Association operates an early childhood center and a banquet facility at 380 S. Bates St., Birmingham, Michigan. In 2025, 73% of events and meetings were booked by residents and businesses from neighboring communities outside of Birmingham, and only 33% of philanthropic dollars given to The Community House Association in 2025 originated from residents in the city of Birmingham.

8. As a nonprofit entity, The Community House Association also engages in various philanthropic activities along with various nonprofit partners.

3

9.      The Community House Association is managed by a Board of Directors, which appoints officers to manage day-to-day operations.

**Background and Events Leading to Chapter 11 Filing**

10.     Since approximately 2012, The Community House Association has operated a full-service banquet facility utilized by residents from across southeast Michigan for weddings, corporate functions and other social events.  Since 1990, The Community House Association has operated a childcare center which currently serves approximately 42 children but is licensed for over 100 children.   Throughout its history, The Community House Association has also provided enrichment programs for youth and adults that support our mission. Revenue from each of these endeavors has enabled The Community House Association to provide support to approximately forty (40) non-profit organizations in Southeast Michigan.

11.     Over the past seven years, The Community House Association has experienced a decrease in revenues and increase in expenditures, which led to the drawdown of reserves and now has made operations increasingly difficult. As a result, The Community House Association has been experiencing significant cash-flow and liquidity issues since November 2024.

12.     Based on the decreased revenues and increased expenses, The Community House Association anticipates running out of cash and not being able to sustain its operations after June 30, 2026.

4

13. Accordingly, last fall, The Community House Association made the decision to (a) wind down its banquet facility and child center operations and (b) pursue a sale of the Property. After the sale, The Community House Association will remain operating as a non-profit entity beyond the sale of the Property and wind down of banquet and child center operations to continue its charitable mission moving forward.

14. On November 25, 2025, the City of Birmingham filed a lawsuit against The Community House Association in Oakland Circuit Court, Case No. 25-219218-CZ (the "OCCC Lawsuit").

15. In the OCCC Lawsuit, the City of Birmingham seeks, among other things, a declaratory judgment that would prohibit a sale of the Property under certain conditions.

16. Discovery has just commenced in the OCCC Lawsuit, and trial is scheduled for April 2027.

17. Efforts by The Community House Association to resolve the OCCC Lawsuit have been unsuccessful.

18. Based on its pressing liquidity issues, which will result in the Debtor likely running out of cash after June 30, 2026, The Community House Association has filed for Chapter 11 to (a) preserve its ongoing operations, (b) pursue a sale of its assets

and (c) through its restructuring, continue its philanthropic mission to serve the community after the conclusion of the Chapter 11.

**Overview of Debtor's Assets**

19. The Debtor owns real property located at 380 S. Bates St., Birmingham, Michigan (the "Property"). In 2024, the Property was appraised at $7,040,000.

20. In September 2025, the Debtor engaged a real estate broker, Savills, Inc., to assist with the sale of the Property.

21. The Debtor's ability to sell the Property on a timely basis has been rendered increasingly difficult due to the OCCC Lawsuit.

22. The Debtor also owns the following assets:

- Equipment, furnishings, etc.:  $163,970.57 (cost value)
- Inventory:                     $40,516.60 (cost value)
- Accounts Receivable as of March 25, 2026: $19,885.46
- Art Work (Sculptures):         $450,000 (appraisal)

**Debtor's Secured Claims**

23. Chief Financial Credit Union ("CFCU"), Debtor's secured lender, asserts mortgages against the Property in connection with the following loans:

- Term Loan:
  - $900,000 (original loan amount)
  - $892,239.16 (outstanding balance)

6

- Revolving Line of Credit No 1:
    - $600,000 (original loan amount)
    - $600,000 (outstanding balance)
- Revolving Line of Credit No 2:
    - $600,000 (original loan amount)
    - $600,000 (outstanding balance)

24. According to Debtor's books and records, CFCU asserts a total claim of $2,092,239.16 ("CFCU Indebtedness") against the Debtor as of the Petition Date. Revolving Line of Credit No. 2 matures, and the underlying balance is due on June 30, 2026.

25. The CFCU Indebtedness is secured by three Mortgages against the Property and assignments of rents. The Debtor is not a party to any leases of the Property and does not receive any rents.

26. Upon information and belief, no other lenders or creditors, assert mortgages or liens against the Property. In addition, no other creditors (including CFCU) asserts a security interest or lien in Debtor's cash, accounts, receivables, inventory or personal property.

**First Day Motion - Prepetition Wages and Compensation**

27. On or shortly after the bankruptcy filing date, I authorized the filing of Debtor's *First Day Motion For Authority to Pay Prepetition Wages, Compensation and Employee Benefits* ("Prepetition Wages Motion").

7

28.     The Debtor currently employs 38 individuals -- 24 full-time employees and 14 part-time employees - as a part of its banquet facility and child center operations.  The Debtor processes payroll through Trion Employer Solutions, Inc. ("Trion"), a Professional Employer Organization ("PEO") that serves as the employer of record for the Employees under IRC §3401(d). Trion is the employer of record under the PEO Agreement executed by the Debtor and Trion.

29.     On March 25, 2026, Debtor transferred funds to Trion to cover this week's payroll obligations. Debtor's next payroll is due on or about April 10, 2026 and covers the preceding two-week period.  The total payroll and payroll related obligations total approximately $68,000.00.  Of this amount, $18,395.59  constitutes wages and payroll obligations arising prior to Debtor's bankruptcy filing date of March 26, 2026 ("Prepetition Employee Obligations").

30.     Payment of wages and compensation to employees, including the Prepetition Employee Obligations is necessary and critical for Debtor to sustain its operations as a going concern and ensure there are no interruptions to its banquet facility and childcare services.

Pursuant to 28 U.S.C. 1746, I declare to the best of my knowledge, under penalty of perjury, that the foregoing statements are true and correct.

[*Signature on following page*]

By: _____
Alison Gaudreau

Dated:  March 26, 2026