**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-43351-tjt |
| **THE COMMUNITY HOUSE ASSOCIATION,** | ) | Chapter 11 |
| **BIRMINGHAM, MICHIGAN** | ) | Judge Thomas J. Tucker |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S APPLICATION FOR ORDER AUTHORIZING**
**EMPLOYMENT OF SAVILLS INC. AS REAL ESTATE BROKER**

The Community House Association, Birmingham, Michigan (the "Debtor"),

in support of its *Application for Order Authorizing Employment of Savills Inc. as*

*Real Estate Broker* (the "Application"), states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

**BACKGROUND**

4. On March 26, 2026 (the "Petition Date"), the Debtor filed a voluntary

petition for relief in this Court under Chapter 11, Subchapter V, of Title 11 of the

United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

5.     The Debtor continues to manage and operate its business as a Debtor in Possession pursuant to § 1184 of the Bankruptcy Code.

6.     As of the filing of this Application, Richardo Kilpatrick has been appointed as the Subchapter V Trustee.

7.     The factual background regarding the Debtor, including its business operations and the events leading to the filing of a Chapter 11 case is set forth in the *Declaration of Alison Gaudreau in Support of Debtor's Chapter 11 Petition and First Day Motions*, which is fully incorporated herein by reference [Docket No. 6].

8.     The Debtor is the owner of certain real property located at 380 South Bates Street, Birmingham, Michigan 48009 (the "Property"). The Debtor is seeking to preserve its going concern value and proceed towards a sale of the Property.

**<u>RELIEF REQUESTED</u>**

9.     The Debtor requests that the Court enter an Order, substantially in the form of **<u>Exhibit A</u>** attached hereto, authorizing the Debtor to retain and employ Savills Inc. ("Applicant") as its real estate broker and advisor to assist the Debtor with marketing and selling the Property.

10.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject

to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out the [debtor in possession's] duties under this title.

11. F. R. Bankr. P. 2014 requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firms] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, its respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

12. The Debtor has selected Applicant primarily because of Applicant's expertise as real estate brokers and advisors. Applicant's qualifications are more fully described in **Exhibit B**.

13. Debtor is also familiar with the Property. Based on the foregoing, the Debtor believes that Applicant is both well qualified and able to serve as real estate brokers for the Debtor in this Chapter 11 case in an efficient and timely manner.

14. Debtor and Applicant have entered into a Listing Agreement, dated April 9, 2026 (the "Listing Agreement"), subject to court approval, under which Applicant will provide real estate brokerage and advisory services to Debtor. A copy of the Listing Agreement is attached hereto as **Exhibit C**.

15. Applicant is expected to render real estate brokerage and advisory services to the Debtor. Applicant is currently advising the Debtor on sale procedures. It is expected that Applicant's services will also include, without limitation, marketing the Property to prospective buyers, vetting the potential buyers' ability to close on a sale, assisting the Debtor in obtaining approval of a sale, conducting a sale of the Property and assisting with all required closing activities.

16. Applicant has indicated its willingness to serve as a real estate broker and advisor to the Debtor and to receive compensation in accordance with the Listing Agreement. As set forth in more detail in the Listing Agreement, Applicant will seek allowance of compensation equal to 3.50% of the gross sale price of the Property. Such compensation shall be paid upon receipt by the Debtor of the sale proceeds at the closing of the transaction. The amount includes all out-of-pocket expenses incurred by Applicant. Applicant has not received any retainer. Applicant will not receive any compensation until closing of a sale.

17. Other than as set forth in this Application and the Listing Agreement, no agreement or understanding exists between the Debtor and Applicant or any other entity for the sharing of compensation received or to be received for services rendered in connection with this Chapter 11 case.

18. Except as set forth in this Application and in the Declaration of Gregory Bockart, attached hereto as **Exhibit D**, and to the best of the Debtor's knowledge,

the members and associates of Applicant: (a) do not have any connection with the Debtor, its affiliates, its creditors, the United States Trustee, any person employed in the office of the United States Trustee, or any other party-in-interest or their respective attorneys and accountants; (b) are "disinterested person[s]," as that term is defined 11 U.S.C. § 101(14); and (c) do not hold or represent an interest adverse to the Debtor's estate.

19. More specifically, as set forth in the Declaration of Gregory Bockart:

a) Applicant is not a creditor of the Debtor.

b) Neither Applicant, nor any employee of Applicant, is or was, within two years before the Petition Date, a director, officer, or employee of the Debtor.

c) Applicant does not have any interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter the Order attached hereto as **Exhibit A** granting the relief requested in the Application and such further relief as this Court deems just and equitable.

Dated: April 20, 2026

Respectfully submitted,

**THE COMMUNITY HOUSE ASSOCIATION, BIRMINGHAM MICHIGAN**

By: /s/ *Alison Gaudreau*
    Alison Gaudreau

Dated: April 20, 2026

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By: /s/ *Danielle M. Love*
    Jason W. Bank (P54447)
    Danielle M. Love (P86248)
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
(313) 961-0200
jbank@kerr-russell.com
dlove@kerr-russell.com
*Counsel for the Debtor and Debtor-In-Possession*

# EXHIBIT A

## PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                                              )
                                                                    )        Case No. 26-43351-tjt
**THE COMMUNITY HOUSE ASSOCIATION,**  )        Chapter 11
**BIRMINGHAM, MICHIGAN**                          )        Judge Thomas J. Tucker
                                                                    )
                Debtor.                                             )
                                                                    )

## ORDER AUTHORIZING DEBTOR TO EMPLOY SAVILLS INC.
## AS REAL ESTATE BROKER

This matter having come before this Court upon the *Debtor's Application for Order Authorizing Employment of Savills Inc. as Real Estate Broker* (the "Application"), which was filed with this Court pursuant to § 327(a) of the United States Bankruptcy Code; the Court has reviewed the Declaration of Gregory Bockart, and has determined that the Application satisfies the requirements of §§ 101(14), 327 and 330 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 5002; and the Court being fully advised in the premises;

**IT IS THEREFORE ORDERED THAT:**

1.      The Debtor's Application is GRANTED;

2.      The Debtor is authorized to employ Savills Inc. consistent with the terms of the Listing Agreement[1] and this Order; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

3.      Savills Inc. shall be compensated for its services only as authorized by the Court, which may include a request for payment out of proceeds of a sale of Debtor's Property as part of a sale approval motion.

# EXHIBIT B

## QUALIFICATIONS OF APPLICANT



2025

# The Savills advantage

Helping people thrive through places and spaces.

savills

# Global network of local <mark>expertise</mark>

Savills is the integrated commercial real estate advisory firm. We bring together people, services, and technology to cut through the complexity of today's markets, helping our clients unlock hidden value and drive results for their business.

For over 160 years, we've truly partnered with every client, tailoring strategies to their unique needs across lease and portfolio solutions, project management, advanced technology, and capital strategies. And with over 600 offices around the world, we deliver the benefit of one of the largest real estate companies in the world, while connecting clients with the local market expertise they need.

**Deep global experience since**



# 1855

# 42,000+

**Global employees**



# FTSE 250

**London Stock Exchange Listed**



**2024 annual revenue of**

# $3.1B

**Pioneered the U.S. tenant representation business model**

# 1954

# 15+

**Services focused on the occupier**

# Net Zero



**Targets for Scopes 1, 2 and 3**

# 680+

**Global offices in 70+ countries**

# 5B+ SF

**of occupier portfolios under oversight globally**

# **Integrated** platform

**Our service offerings include tenant representation, workplace strategy & occupant experience, capital markets, workforce & incentives strategy, portfolio strategy & process development, project management, lease administration & audit, and transaction management.**

Our advisors take a strategic consultative approach to real estate problem solving, helping occupier clients develop solutions that empower their people and enhance corporate objectives.

In providing these services, we seek to understand clients' objectives from broad ranging perspectives including human capital, technology needs, financial goals and growth plans to create solutions that support the organization. This aligns clients' real estate strategy with their organizational strategy, mitigating the risk of seemingly good real estate decisions ultimately proving to be poor business decisions.

Since pioneering the occupier focused service model in 1954, we have been committed to providing clients with all services

relevant to real estate occupancy. Fueled by our entrepreneurial spirit and innovative environment, our top professionals continually seek out fresh opportunities to help our clients in the following core service areas.

- Workplace Strategy
- Portfolio Solutions
- Lease Admin and Audit
- Knowledge Cubed
- Financial Analysis
- Transaction Management
- Project Management
- Labor Analytics/Workforce
- Workthere
- Industrial Services
- ESG
- Capital Markets





**North American Headquarters**

399 Park Avenue, 11th Floor, New York, NY 10022  |  +1 212 326 1000

FIND US ON SOCIAL



**savills.us**

Disclaimer: The material in this presentation has been prepared solely for informational purposes and is strictly confidential. Any disclosure, use, copying or circulation of this presentation (or the information contained within it) is strictly prohibited, unless you have obtained Savills' prior written consent. Neither this presentation nor any part of it shall form the basis of, or be relied upon in connection with, any offer or transaction, or act as an inducement to enter into any contract or commitment whatsoever. NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, IS GIVEN AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN AND SAVILLS IS UNDER NO OBLIGATION TO SUBSEQUENTLY CORRECT IT IN THE EVENT OF ERRORS.

# EXHIBIT C

## LISTING AGREEMENT



**LISTING AGREEMENT FOR SALE** (this "**Agreement**") dated as of April __9__, 2026 between Savills Inc., ("**Advisor**"), and The Community House Association, Birmingham, MI on behalf of itself and each of its affiliates (the "**Seller**").

Background

The Seller owns the property known as 380 Bates Street, Birmingham, MI 48009 (the "**Property**") and desires Advisor's assistance to arrange a transaction between the Seller and a purchaser (a "**Counterparty**") pursuant to which such Counterparty or its affiliate, designee, nominee or assignee will, directly or indirectly, purchase or otherwise acquire the Property and lease the Property back to the Seller, all on terms acceptable to Seller.

Agreement

1. **Appointment**. The Seller hereby appoints Advisor, and Advisor hereby accepts appointment, as the Seller's exclusive real estate broker and advisor, with the exclusive right to arrange a transaction as described above (any such transaction being a "**Transaction**").

2. **The Seller's Approval Required; Referral of Inquiries to Advisor**. The terms and conditions of any proposed Transaction shall be subject to acceptance by the Seller in its sole and absolute discretion. The Seller shall have the right to refuse to negotiate or enter into any Transaction with any party for any reason or no reason. Advisor shall not have the authority to accept any offer or proposal or to enter into any commitment on behalf of the Seller. The Seller shall refer to Advisor all inquiries regarding the Property received during the Term from any prospective Counterparty, and negotiations with any such Counterparty shall be conducted by or through Advisor and in coordination with Seller's other professional advisors.

3. **The Seller to Furnish Information**. The Seller shall furnish to Advisor such information with respect to the Property in Seller's possession and control as Advisor may reasonably request in order to render its services effectively. Advisor shall under all circumstances be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been furnished to it by, or on behalf of, the Seller and shall have no obligation to verify the accuracy or completeness of any such information and shall not be responsible for the inaccuracy or incompleteness of any information provided; provided however Seller does not make any representation or warranty (express or implied) concerning the completeness or accuracy of any information provided to Agent. All documents and other materials, investigations, reports and information with respect to the Property shall be prepared by or for the Seller and shall be furnished to prospective Counterparties on behalf of the Seller; provided, however, Seller makes no representation or warranty of any kind or nature as to the accuracy or completeness of any such information provided to a Counterparty and no Counterparty shall have any recourse to Seller regarding such information. The Seller shall provide reasonable access to the Property for Advisor, as arranged by Advisor and/or prospective Counterparties.

4. **Term of Appointment**. The term of Advisor's appointment hereunder (the "**Term**") shall commence on the date hereof and end on September 30, 2026, unless sooner terminated by the Seller for cause. As used herein "**cause**" shall mean any breach of this Agreement by Advisor which continues unremedied for ten (10) business days after written notice thereof from the Seller is received by Advisor. Except for the provisions of this Agreement which are expressly limited to the Term, all of the provisions of this Agreement shall survive the expiration or sooner termination of the Term.

5. **Compensation**.  Upon the closing of any Transaction which closes and Seller's receipt of the net closing proceeds

   a.  during the Term with any Counterparty or its affiliate, designee or assignee (whether or not arranged by Advisor), or

   b.  after the Term pursuant to an agreement entered into

      i.  during the Term with any Counterparty or its affiliate, designee or assignee (whether or not arranged by Advisor), or

      ii.  within six (6) months after the end of the Term with any Counterparty or its affiliate, designee or assignee to whom the Property was presented by Advisor during the Term or from whom during the Term the Seller received an inquiry which it did not refer to Advisor,

   the Seller shall pay Advisor the fee with respect to such Transaction provided for in Exhibit A hereto. The Seller agrees that such six (6) month period shall be extended for so long as negotiations with a Counterparty are ongoing.  At the conclusion of the Term, Advisor shall provide Seller with a list of potential Counterparties introduced to the Property by Advisor during the Term, which list shall be conclusive evidence of Counterparties introduced to the Property by Advisor.

6. **Expenses**. The Seller shall pay the fees and disbursements of legal counsel, accountants and other professionals engaged by the Seller.  Advisor, at Advisor's cost, expense and discretion, shall market the Property. The Property shall be marketed to Seller's internal list of brokers, CoStar, LoopNet, and Crexi.

7. **Representations**.  Each party represents and warrants to the other that the representing party has full right and authority to enter into and perform its obligations under this Agreement, and that the same does not violate or conflict with, or require any consents, approvals or under, any agreement by which the representing party is governed or bound (except for any such consents or approvals which have been received or notices which have been given).

8. **Amendments and Assignments**.  This Agreement may not be amended or modified except in writing signed by each of the parties.  This Agreement (i) expresses the parties' entire agreement on the matters covered herein, and (ii) supersedes all prior understandings between such parties on such matters. Neither party may assign this Agreement without the prior consent of the other party, which consent may be withheld in such party's sole discretion.

9. **Publication of Transaction:**  After the closing of a Transaction for which Advisor is entitled to compensation hereunder, Advisor may publish a notice of such Transaction in such format, in such publications and at such times as Advisor may deem appropriate and consistent with its customary practices, subject in each case to the written approval of the Seller, in its sole and absolute discretion.

10. **Indemnification**.  Seller acknowledges that Advisor is not obligated to and has made no independent investigation regarding the condition of the Property (including structural, mechanical, soils, subsurface or environmental matters and hazardous substances) or any present or future title, legal, financial, zoning, entitlement or environmental matters relative to the Property or any of the leases, license or other agreements to which the Property is or may be subject (all of the foregoing being called "**Property Conditions**").  All documents, materials, investigations, reports and information with respect to Property Conditions shall be prepared by or for the Seller and shall be furnished to prospective Counterparties on

behalf of the Seller without recourse, representation or warranty as to the completeness or accuracy of any such information. Seller agrees to indemnify and hold Advisor harmless from and against all claims, costs, liabilities, settlements, and judgments (collectively "claims"), and all costs of defense against such claims (including attorneys' fees and disbursements), brought against Advisor by any Counterparty who has received information regarding the Property Conditions from Seller. This paragraph shall survive the expiration or sooner termination of this Agreement.

11. **Supersession of Prior Agreement**. This Listing Agreement supersedes and replaces in its entirety any and all prior listing agreements, understandings, or arrangements between the parties relating to the Property, whether written or oral. All terms, conditions, and obligations of any prior listing agreement are hereby null and void and of no further force or effect upon execution of this Agreement.

12. **Court Approval.** The parties acknowledge that this Listing Agreement is subject to review and approval by the United States Bankruptcy Court, Eastern District of MI, Case No. 26-43351-tjt, and that the court may require modifications or revisions as a condition of its approval. Subject to any such court-ordered revisions, this Agreement shall otherwise be fully binding and enforceable between the parties upon execution. The parties agree to cooperate in good faith to implement any modifications required by the court, and this Agreement shall be deemed amended accordingly upon entry of the court's order.**Notices**. Any notices required or permitted to be given under the terms of this Agreement shall be in writing and shall be deemed to have been given when (i) personally delivered with signed delivery receipt obtained; (ii) when delivered by a nationally recognized overnight courier service such as FedEx; or (iii) when received via United States first class mail if sent postage prepaid by registered or certified mail, return receipt requested, in each case addressed to the applicable address(es) set forth below.

> If to the Seller, The Community House Association, Birmingham, Michigan, 380 S Bates Street, Birmingham, MI 48009, Attention: Camille Jayne, cjayne@communityhousehelps.org
>
> If to Advisor, Savills Inc., 213 Hamilton Row, Birmingham, Michigan 48009, Attention: Greg Bockart with a copy to Savills Inc., 399 Park Avenue, 11th Floor, New York, New York 10022, Attention: General Counsel, LegalNotices@savills.us

The time to respond to any notice shall commence on the date of receipt at the appropriate address (or attempted delivery if delivery is refused by such party during normal business hours). A party may change the address to which notices shall be sent to it by ten (10) days' prior written notice to the other party. Any notice served by an attorney for a party shall have the effect of a notice served by the party.

13. **OFAC**. Each party warrants and represents to the other that, the representing party and all parties owning (directly or indirectly) an ownership interest in the representing party (a) is not, and shall not become, a person or entity with whom the other party is restricted from doing business under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order, or other governmental action; and (b) is not knowingly engaged in, and shall not knowingly engage in, any dealing or transactions or be otherwise associated with such persons or entities described in clause (a) above.

14. **Waiver of Jury Trial.** Advisor and the Seller each waive trial by jury in any action or proceeding under this Agreement.

15. **Interest.** Any amount due under this Agreement and not paid when due shall bear interest at the rate of two percent per annum in excess of the prime commercial lending rate as published from time to time in *The Wall Street Journal (New York edition)*, but not in excess of the highest rate permitted by applicable law.

16. **Governing Law; Attorneys' Fees.** This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan (without reference to principles of conflicts of laws). Any disputes related to or arising from this Agreement must be brought exclusively in the Oakland County, Michigan Circuit Court or the United States District Court for the Eastern District of Michigan, to the jurisdiction of which each of the parties hereby submits.

17. **Miscellaneous.** This Agreement may be executed and delivered (including by facsimile, "pdf" or other electronic transmission) in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

Executed by the parties to confirm the foregoing.

SAVILLS INC.

THE COMMUNITY HOUSE ASSOCIATION, BIRMINGHAM, MICHIGAN

By: _____
Name: Greg Bockart
Title: Vice Chairman

By: _____
Name: Alison Gaudreau
Title: President

Exhibit A
Compensation

**Rate:** Three and a half percent (3.50%) of the gross sales price.

**Time of Payment:** All fees shall be paid in full upon receipt by Seller of the sale proceeds at the closing of the Transaction.

<u>**EXHIBIT D**</u>

**DECLARATION OF GREGORY BOCKART IN SUPPORT OF APPLICATION OF DEBTOR TO EMPLOY SAVILLS INC. AS REAL ESTATE BROKER**

In re:                                     )
                                           )    Case No. 26-43351-tjt
**THE COMMUNITY HOUSE ASSOCIATION,**  )    Chapter 11
**BIRMINGHAM, MICHIGAN**                   )    Judge Thomas J. Tucker
                                           )
        Debtor.                            )
                                           )

## DECLARATION OF GREGORY BOCKART IN SUPPORT OF DEBTOR'S APPLICATION TO EMPLOY SAVILLS INC. <u>AS REAL ESTATE BROKER</u>

I, Gregory J. Bockart, Jr., state:

1.      Unless otherwise stated, this Declaration is based upon my personal knowledge. I am familiar with the facts and circumstances set forth in this Declaration, and I am in all respects competent to make this Declaration in support of the *Debtor's Application for Order Authorizing Employment of Savills Inc. as Real Estate Broker* (the "<u>Application</u>") filed by The Community House Association, Birmingham, Michigan ("<u>Debtor</u>").

2.      I am a Vice Chairman of Savills Inc., a real estate brokerage firm ("<u>Applicant</u>"). Applicant has extensive experience providing real estate brokerage and related services both locally and nationally.

3.      In connection with this Chapter 11 case, the Debtor has requested Court authorization to retain Applicant as its real estate broker and advisor. The

professional services that Applicant will render to the Debtor will include those described in the Application and the Listing Agreement[1]. Applicant will provide full-service brokerage and advisory services throughout the entire sale process, from initial marketing through final closing.

4. Applicant intends to apply to this Court for compensation for professional services rendered in connection with this Chapter 11 case in compliance with applicable provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan, and orders of this Court.

5. On April 10, 2026, Applicant and Debtor entered into a Listing Agreement. Under the Listing Agreement, Applicant and the Debtor have agreed to a compensation arrangement whereby Applicant will be paid 3.50% of the total sale price of Property at closing. This fee is intended to include all compensation to Applicant, including all out-of-pocket expenses.

6. Accordingly, as of the Petition Date, Applicant holds no prepetition claim against the Debtor or its estate.

7. No promises have been received by Applicant or by any professional of Applicant regarding compensation in connection with this Chapter 11 case, other

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2

than as set forth in this Declaration, the Application, and the Listing Agreement.

8. Pursuant to Fed. R. Bankr. P. 2016(b), Applicant has not shared, nor agreed to share any compensation it has received or may receive in this case with any other party, person, or entity other than with the professionals of Applicant.

9. I and my staff have reviewed the list of creditors and other interested parties in this case to determine if Applicant has any connections to any creditors or other parties-in-interest. Applicant has further compared the list of creditors and other interested parties to current and former clients of Applicant over the past 10 years and determined that Applicant has no connections. We have also confirmed that, to the best of Applicant's knowledge, Applicant has no connections with the United States Trustee or any person employed in the United States Trustee's Office or with the Judge assigned to this case other than as a result of Applicant's professional services in other bankruptcy court matters wholly unrelated to the Debtor.

10. Based on the results of a conflict search conducted, neither I, Applicant, nor any member or employee of Applicant, insofar as I have been able to ascertain, has any connection with the Debtor, its creditors, or other parties-in-interest, except as disclosed herein or in the Application.

11. To the best of my knowledge, neither Applicant nor any of its professionals:

a) Is a creditor, an equity security holder, or an insider of the Debtor;

b) Was, within two years before the date of filing of the Debtor's Chapter 11 case, a director, officer, or employee of the Debtor; or

c) Has an interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

12.     Applicant will periodically review its files during this Chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any relevant facts or relationships are discovered or arise, Applicant will promptly file a supplemental declaration pursuant to Fed. R. Bankr. P. 2014(a).

13.     I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 17 , 2026

_____
Gregory J. Bockart, Jr.

Executed in Oakland County, Michigan