In re:

**THE COMMUNITY HOUSE ASSOCIATION, BIRMINGHAM, MICHIGAN,**

      Debtor.

Case No. 26-43351-tjt
Chapter 11
Judge Thomas J. Tucker

## DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING THE SALE OF DEBTOR'S PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS (BUT SUBJECT TO PERMITTED EXCEPTIONS) AND <u>FOR CERTAIN RELATED RELIEF</u>

The Community House Association, Birmingham, Michigan, as Debtor and Debtor-in-Possession (the "<u>Debtor</u>" or "<u>TCHA</u>"), by and through its counsel, Kerr, Russell and Weber, PLC, and in support of its *Motion for Entry of Order Authorizing the Sale of Debtor's Property Free and Clear of All Liens, Claims, Encumbrances, and Interests (But Subject to Permitted Exceptions) and for Certain Related Relief* (the "<u>Motion</u>"), states as follows:

### Preliminary Statement

Since 1923, Debtor has operated a non-profit organization serving the interests of the Birmingham and Southeast Michigan community. The Community House building has been located at 380 S. Bates in Birmingham, Michigan (the "<u>Property</u>") since 1930, and has hosted hundreds of philanthropic, community and

social events. In recent years, increased costs of operations and maintaining the building have rendered ongoing operations unprofitable and unsustainable.

As a result, last fall, Debtor listed the Community House building for sale, with the goal of continuing to operate as a non-profit entity after June 30, 2026. Shortly thereafter, the City of Birmingham (the "City") filed a lawsuit against Debtor and alleged Debtor was attempting to violate certain deed restrictions or conditions relating to the sale of the Property. The litigation over the Deed Restrictions hampered Debtor's ability to sell the Property. Meanwhile, Debtor faced a looming liquidity cliff that would prevent operations after June 30 due to insufficient funds. Accordingly, Debtor filed a voluntary Chapter 11 petition to pursue and complete a sale prior to June 30.

Since the filing of the bankruptcy petition, the Debtor has continued to explore a sale, while working to resolve its dispute with the City. After exhaustive back-and-forth negotiations, the Debtor and the City have reached an agreement, subject to Court approval, for the City to purchase the Property for $5.2 million.

The sale of the Property, if approved, will (1) permit Debtor to maximize value from the sale of building, (2) result in the satisfaction of claims of all creditors, (3) satisfy the Deed Restrictions (defined below) encumbering the Property, (4) resolve contentious litigation and claims between the City and Debtor, and (5) ensure the continuation of Debtor's non-profit operations, with a focus on charitable and

2

philanthropic initiatives for the greater Birmingham community and southeast Michigan.

## JURISDICTION

1. This Court has jurisdiction over this Motion, pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409(a).

## GENERAL ALLEGATIONS

4. On March 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court under Chapter 11, Subchapter V, of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

5. The Debtor continues to manage and operate its business as a Debtor in Possession pursuant to § 1184 of the Bankruptcy Code. Alison Gaudreau is the President of the Debtor and responsible person for the Debtor in Possession.

6. Richardo Kilpatrick has been appointed as Subchapter V Trustee.

7. The factual background regarding the Debtor, including its business operations and the events leading to the filing of a Chapter 11 case, is set forth in the

3

*Declaration of Alison Gaudreau in Support of Debtor's Chapter 11 Petition and First Day Motions* ("First Day Declaration", Doc 6).

<u>BACKGROUND</u>

8. Debtor, The Community House Association, is a Michigan nonprofit corporation formed in 1923 and initially operated by members of the St. James Episcopal Church. In 1930, the Community House building located at 380 S. Bates, Birmingham, Michigan was acquired and opened to the public.

9. Since 1990, Debtor has operated a childcare center which currently serves approximately 42 children but is licensed for over 100 children.

10. In 1999, the Debtor board amended its Articles of Incorporation to expand its purpose to include making distributions to qualified 501(c)(3) nonprofit organizations.

11. Since approximately 2012, Debtor has operated a full-service banquet facility utilized by residents from across Southeast Michigan for weddings, corporate functions and other social events.

<u>THE PROPERTY AND DEED RESTRICTION</u>

12. The Property owned by Debtor located at 380 S. Bates in Birmingham is subject to a charitable and other purpose conveyance condition or restriction (the "Deed Restriction").

13. The Deed Restriction, pursuant to the Deed of Trust (attached as

**Exhibit 6b**), incorporates the Debtor's Articles of Incorporation as follows:

> "To encourage, engage in and carry on social, philanthropic, and civic activities among and for the residents of the Village of Birmingham, Michigan, and to provide and maintain a center therefor by acquiring, leasing, purchasing, improving, and maintaining adequate real and personal property."

14. The Deed of Trust also provides among other things that upon dissolution or abandonment of Debtor's purposes, the Property would be "convey[ed] to such charitable, benevolent or educational organization in the said Village of Birmingham or its successor municipality as the said Trustees herein or their elected or appointed successors may by a four-fifths vote determine upon, subject to the payment of all debts and the liquidation of all liabilities or instead thereof and by like four-fifths vote to lease the same for a nominal rental to the said Village of Birmingham or its successor municipality to be used by it for a community center for the benefit of the public, and to otherwise carry into effect all other provisions herein contained." *See* Deed of Trust at pg. 4, section 4.

15. In 1989, the existing Trustees requested that the Probate Court terminate the Trust and transfer title directly to Debtor, subject to the Deed of Trust. The Probate Court entered an Order terminating the Trust and allowing the transfer, subject to the terms and conditions of the Deed of Trust back to Debtor. *See* Probate Order attached at **Exhibit 6c**. Thereafter, the Quit Claim Deed conveyed the Property to Debtor and expressly stated that the transfer was subject to the Probate

Court's Order. *See* Quit Claim Deed attached at **Exhibit** 6c.

<u>**DEBTOR'S LIQUIDITY ISSUES**</u>

16. Over the past seven years, Debtor has experienced a decrease in revenues and increase in expenditures, which led to the drawdown of reserves and has made sustaining operations increasingly difficult. As a result, the Debtor has been experiencing significant cash-flow and liquidity issues since November 2024.

17. On the Petition Date, Alison Gaudreau, president of the Debtor, submitted the First Day Declaration. As set forth in the First Day Declaration, based on the decreased revenues and increased expenses, Ms. Gaudreau stated that the Debtor anticipates running out of cash and not being able to sustain its operations past June 30, 2026.

18. Accordingly, last fall, the Debtor made the decision to (a) wind down its banquet facility and child center operations and (b) pursue a sale of the Property.

19. The Debtor filed for Chapter 11 to (a) preserve its ongoing operations through June 30, 2026, (b) pursue a sale of the Property and (c) through its restructuring, continue its philanthropic mission to serve the community after the conclusion of this proceeding.

20. The Debtor has attached the *Declaration of Alison Gaudreau* in support of the Sale Motion, attached as **Exhibit 5a** ("<u>Gaudreau Declaration</u>")**.** In the Declaration, Ms. Gaudreau states that the Debtor's financial conditions and

projections have not materially changed since the submission of the First Day Declaration, and that it is still anticipated that the Debtor will run out of cash and be unable to continue operations after June 30, 2026. Accordingly, it is critical that the Debtor close on a sale of the Property by June 30, 2026.

THE CITY'S LAWSUIT AND MARKETING EFFORTS

21. Last fall, Debtor engaged Savills Inc. ("Savills") to market the Property for sale.

22. On November 25, 2025, the City filed a lawsuit against The Community House Association in Oakland County Circuit Court, Case No. 25-219218-CZ (the "Lawsuit"). The legal interpretation of the Deed Restriction was one of the primary issues in the litigation. In the Lawsuit, the City alleged that the Debtor was attempting to violate the Deed Restrictions in connection with the potential sale of the Property.

23. Prior to the bankruptcy filing and filing of the Lawsuit, the Debtor engaged in substantial marketing efforts and discussed the potential sale of the Property with a number of interested parties and potential buyers. The Debtor received an offer to purchase the Property from the United Jewish Federation, which was subsequently withdrawn. *See* Declaration of Gregory Bockart, Jr. ("Bockart Declaration"), attached as **Exhibit 5b**.

24. Since the Petition Date, Savills has continued to market the Property

7

to non-profit organizations.  *See* Bockart Declaration, paragraph 9.

25. Since the Petition Date, the Debtor and the City have also engaged in extensive discussions regarding a potential sale to the City.  These discussions led to the execution of the Agreement to sell the Property to City, which is the subject of this Motion.

26. As set forth in the Bockart Declaration, the marketing efforts to sell the Property have been fulsome and resulted in the highest and best price for the Property under the circumstances.

27. The litigation relating to the Deed Restrictions impacted Debtor's efforts to market and sell the Property. Any offer that the Debtor generated would require the Debtor to satisfy the Deed Restriction, or would have faced a likely objection from the City.

## THE PROPOSED SALE OF THE PROPERTY AND SETTLEMENT WITH THE CITY

28. Debtor and the City have reached a global settlement that will result in the City's purchase of the Property in compliance with the Deed Restriction, the division of the Endowment (defined below) or its equivalent, a resolution of the litigation between the City and the Debtor, and a release of claims. Further, the settlement will enable Debtor to continue its philanthropic and charitable missions moving forward.

29.  After extensive negotiations, the Debtor and the City agreed on the

terms of a Real Estate Purchase Agreement ("Agreement"), subject to Court approval, attached as **Exhibit 6a**. The Debtor executed the Agreement on May 17, 2026. The City executed the Agreement on May 19, 2026.

30. The material terms of the Agreement are as follows:

A. The City will purchase the Property, along with certain personal property at the Community House, for $5.2 million.

B. The transfer of the Property will be free and clear of all liens, claims encumbrances and interests pursuant to 11 U.S.C. § 363(f), except for the "Permitted Exceptions" (as defined in paragraph 3 of the Agreement. The Permitted Exceptions include the Deed Restriction.)

C. The closing of the sale of the Property will take place by June 30, 2026.

D. The City and Debtor will execute a mutual release of all claims.

E. The City intends to continue operating a childcare and banquet center at the Property, and Debtor agrees to cooperate with transition issues, as provided in paragraph 32 of the Agreement.

F. Upon closing, CFSEM[1] will divide the Endowment into two separate endowments: one endowment for the continuing benefit of Debtor and one endowment for the benefit of the City (the "Endowment Division"). The Endowment Division is contemplated to occur after the closing of the sale and is subject to approval by CFSEM. Under the Agreement, Debtor has agreed to escrow $800,000 (or one-half of the Endowment) pending approval of the CFSEM (the "Escrow"). In the event the Endowment Division is not approved, the Escrow will be paid to the Purchaser into a donor advised fund to be administered by CFSEM (the "DAF Funding"

---

[1] The Community Foundation for Southeast Michigan ("CFSEM") holds an endowment for the benefit of Debtor to support the charitable purposes of The Community House of Birmingham (the "Endowment") totaling approximately $1.6 million. Debtor is a beneficiary of the Endowment but does not own or have any rights or control over the Endowment.

and together with the Endowment Division, the "Funding Contribution").[2]

## RELIEF REQUESTED

31. The Debtor seeks approval of the Agreement and the agreements and transactions contemplated therein, which include but are not limited to (a) authority to sell the Property to the City, subject only the Deed Restriction (defined in the Agreement as part of the Permitted Exceptions), and free and clear of all other interests, liens, and claims pursuant to 11 U.S.C. § 363(f), and (b) the Funding Contribution, and (c) approval of the mutual releases between the City and Debtor, as set forth in the Agreement.

## LEGAL STANDARD AND AUTHORITY

32. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).

33. In approving a sale outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363 of the Bankruptcy Code, courts, including those in the Sixth Circuit, have adopted the "sound business reason" test

---

[2] On May 20, 2026 Debtor and the City agreed in writing to certain clarifications and modifications to the Agreement: (1) included in the purchased assets are Debtor's interests in the two liquor licenses (X5206 (on premises) and X108641 (off premises)) described in the Agreement; (2) Debtor's obligations under section 32 of the Agreement include full cooperation regarding the transfer of the liquor licenses to the Purchaser. Debtor agrees to cooperate with respect to child care licensing for Purchaser to the extent applicable; and (3) items (i) and (j) are stricken from Exhibit A to the Agreement (the conference table and chairs) (all conferences tables and chairs are personal property included in the sale).

established by the Second Circuit in *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.),* 722 F.2d 1063 (2nd Cir. 1983). *See Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 391 (6th Cir. 1986); *In re Nicole Energy Servs., Inc.,* 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008); *In re Jillian's Entm't Holdings,* 327 B.R. 616, 617 (Bankr. W.D. Ky. 2005) (stating that the *Lionel* standard has been adopted by the vast majority of courts); *see also In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the buyer is acting in good faith).

34. A debtor's showing of sound business justification need not be unduly exhaustive; instead the debtor or trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel,* 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.,* 973 F.2d 141, 144 (2nd Cir. 1992).

35. Federal Rule of Bankruptcy Procedure 6004(f)(1) expressly provides

that "a sale that is not in the ordinary course of business may be made by public auction or private sale."

36. "In general, there is no requirement in the Bankruptcy Code or Bankruptcy Rules that an asset sale be subject to a formal auction." *In re Weiss Multi-Strategy Advisers LLC*, 665 B.R. 578 (Bankr. S.D.N.Y. 2024) (internal citation omitted).

*See also In re Weiss Multi-Strategy Advisers LLC*, 665 B.R. 578 (Bankr. S.D.N.Y. 2024) (holding that the private sale of estate assets was proper, provided that sale motion disclosed that sale was private and explained why the debtor sought to structure the sale in such manner and how it was likely to maximize the sale price).

37. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of third-party interests only if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Since section 363(f) is written in the disjunctive, any of the five conditions provides authority to sell free and clear of claims, liens and encumbrances. *See In re Wolverine Radio Co.,* 930 F.2d 1132, 1147, n.24 (6th Cir. 1991). *See generally In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996); *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002).

38. Section 363(f) is satisfied because (i) Chief Financial Credit Union, Debtor's secured lender, has consented to the sale of the Property and (ii) the total sales price exceeds all of the liens or interests in the Property.

39. The proposed sale of the Property is the product of vigorous, arms'-length, good faith negotiations between the parties.

40. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Made In Detroit, Inc.,* 414 F.3d 576, 581 (6th Cir. 2005); *Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Abbotts Dairies of Penn.*, 788 F.2d 143, 147 (3rd Cir. 1986).

41. To be considered a "good faith purchaser" under section 363(m) of the Bankruptcy Code, the purchaser "must demonstrate that it purchased the property 'in good faith' and that it did so 'for value.'" *In re Made in Detroit, Inc.*, 414 F.3d at 581 (quoting *Cumberland Farms Dairy, Inc. v. Nat'l Farmers' Org., Inc. (In re Abbotts Dairies of Penn., Inc.),* 788 F.2d 143, 147 (3d Cir. 1986)).

42. A demonstration of a lack of good faith requires a showing of "fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted 'an attempt to take grossly unfair advantage of other

bidders.'" 255 *Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. P'ship), 100 F.3d 1214, 1218 (6th Cir. 1996) (quoting In re Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1173 (9th Cir. 1988)) (additional citations omitted).*

43. The City is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Agreement is a good faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.

44. In addition, Section 105(a) of the Code provides, *inter alia*, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title."

### THE COURT SHOULD APPROVE THE SALE TO THE CITY

45. The Debtor has exercised its business judgment and determined that a sale to the City under the Agreement is in the best interests of the estate.

46. The Court should approve the Agreement and the sale of the Property to the City by private sale.

47. Compelling business justifications exists for the proposed sale of the Property.

> A. The Debtor does not have sufficient cash or access to financing to continue the Chapter 11 case past June 30, 2026.
>
> B. The sale to the City will be in compliance with the Deed Restriction

26-43351-tjt   Doc 65   Filed 05/20/26   Entered 05/20/26 16:45:45   Page 14 of 76

and resolve any disputes over the interpretation of the Deed Restriction.

C. As evidenced by the OCCC Lawsuit and the issues raised therein, given the nature of the Deed Restriction, any other proposed sale to could lead to significant, protracted litigation with the City and other interested parties. The potential litigation would cost the Debtor's estate a significant amount of legal fees and would push the closing of the sale past June 30. The Debtor does not have sufficient resources to fund protracted and contentious litigation over issues related to the Deed Restriction.

D. The sale to the City will satisfy claims of all creditors of the estate and permit the Debtor to retain sufficient funds for its future philanthropic endeavors as a non-profit organization moving forward.

48. Given the circumstances, the proposed sale of the Property to the City is a reasonable exercise of the Debtor's business judgment. The sale is the best available alternative for the estate and ensures satisfaction of claims of creditors and a resolution of the litigation with the City over the Deed Restriction.

49. The proposed sale of the Property to the City results in a value-maximizing transaction with proceeds anticipated to be sufficient to satisfy all allowed claims in full, including secured creditors and unsecured creditors, with any remaining proceeds to be permanently endowed to support the Debtor's charitable mission. The proposed sale is in the best interests of the Debtor, its creditors and interested parties. *See Gaudreau Declaration*, paragraph 11-12.

## WAIVER OF STAY PROVIDED BY FRBP 6004(H)

50. Federal Rule of Bankruptcy Procedure 6004(h) provides, "[a]n order authorizing the use, sale or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

51. The Debtor requests that the Court waive the fourteen (14) day stay of FRBP 6004. The waiver of the stay will permit the parties to immediately proceed towards closing, so that closing may be completed by June 30, 2026 for the benefit of all creditors and the estate.

## NOTICE

52. This Motion has been served upon (a) the Office of the United States Trustee; (b) the Subchapter V Trustee; (c) Debtor's secured creditor, Chief Financial Credit Union; (d) counsel for the City and (e) all parties who have filed appearances or requested notice via the Court's electronic case filing system. Notice of the Motion has been provided to Debtor's entire creditor matrix in accordance with F. R. Bankr. P. 2002. The Debtor submits that no further notice is required.

## NO PRIOR REQUEST

53. No previous motion for the requested relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court (a) grant the Motion, (b) enter an order substantially in the form of **Exhibit 1** approving the

sale under the terms of the Agreement and (c) granting such other and further relief as is just and equitable.

Respectfully submitted,

Dated:  May 20, 2026                **KERR, RUSSELL AND WEBER, PLC**

By:/s/ *Jason W. Bank*
Jason W. Bank (P54447)
Danielle M. Love (P86248)
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200
jbank@kerr-russell.com
dlove@kerr-russell.com
*Counsel for Debtor and*
*Debtor in Possession*

# EXHIBIT 1

## PROPOSED ORDER

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

In re:

**THE COMMUNITY HOUSE ASSOCIATION, BIRMINGHAM, MICHIGAN,**

Case No. 26-43351-tjt
Chapter 11
Judge Thomas J. Tucker

    Debtor.

---

## ORDER AUTHORIZING THE SALE OF THE DEBTOR'S PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS (BUT SUBJECT TO PERMITTED EXCEPTIONS) PURSUANT TO 11 U.S.C. §363 AND FOR CERTAIN OTHER RELIEF

This matter comes before the Court on the *Motion for Order Authorizing the Sale of Debtor's Property Free and Clear of All Liens, Claims, Encumbrances, and Interests (But Subject to Permitted Exceptions) Pursuant to 11 U.S.C. §363 and for Certain Other Relief* (the "Sale Motion", Doc ___)[1] filed by The Community House Association, Birmingham, Michigan (the "Debtor"). The Debtor seeks to sell property commonly known as 380 S. Bates Street, Birmingham, Michigan (the "Property") to the City of Birmingham, on behalf of a nonprofit entity to be formed (the "Purchaser"). The Court having conducted a hearing on the Sale Motion and reviewed and considered: (i) the Sale Motion and the exhibits thereto, (ii) the

---

[1] Unless otherwise stated, capitalized terms used but not defined in this Sale Order have the meanings given to them in the Sale Motion.

proposed Real Estate Purchase Agreement ("Agreement") executed by Purchaser, (iii) Declaration of Alison Gaudreau in support of the Sale Motion, (iv) Declaration of Gregory Bockart, Jr. in Support of the Sale Motion; and (v) the arguments made and evidence proffered or adduced at the hearing; due notice of the Motion and relief sought herein has been provided and no further notice is required. It appears that the relief requested in the Sale Motion is in the best interests of the Debtor and its estate, and upon the full record of this bankruptcy case, the hearing on the Sale Motion ("Sale Hearing") and all filings and other hearings in this case, and after due deliberation thereon; all objections having been withdrawn, resolved, or otherwise overruled; and good cause appearing therefore:

**THE COURT FINDS AND DETERMINES THAT**:[2]

A.    **Jurisdiction and Venue.** Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq* (the "Code" or "Bankruptcy Code") on March 26, 2026. The Court has jurisdiction to consider the Sale Motion and the relief requested pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

B. **Statutory Predicates.** The statutory predicates for the relief sought in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004 and 6006.

C. **Notice.** Under the circumstances of this case, notice of the Sale Motion, and the Sale Hearing was proper, timely, adequate, and sufficient, and were provided in accordance with all applicable laws including, but not limited to, section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, and was reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and interests, and no other or further notice of the Sale Motion, and Sale Hearing or any matters in connection therewith is or shall be required.

D. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all creditors and parties in interest.

E. **Marketing Process.** As evidenced by the Sale Motion and evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, and in light of the circumstances of this chapter 11 case: (i) the Debtor has adequately marketed the Property; (ii) creditors and interested parties have been given a reasonable opportunity to object to the proposed sale; (iii) the consideration provided for in the Agreement constitutes the highest and best offer for the Property, provides fair and reasonable consideration for the

Property and is in the best interest of the estate; (iv) prompt approval of the sale is the best means to preserve and maximize the value of the Debtor's assets; (v) the sale maximizes the fair value for parties in interest; (vi) the Debtor is receiving reasonably equivalent value for the Property; and (vii) the Debtor's determination that the Agreement constitutes the highest and best offer for the Property and that the sale constitutes a valid and sound exercise of the Debtor's business judgment.

F.      **Good Faith.** The sale process engaged in by the Debtor and the Purchaser, and their respective management, board of directors, employees, agents, advisors and representatives, including, without limitation, the negotiation of the Agreement, was conducted at arm's length, non-collusive, in good faith, and fair. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Agreement or the sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

G.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, the Purchaser is entitled to all the protections afforded thereby. Neither the Purchaser nor any of its employees or representatives are an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.  No common identify of board members or employees exist between Debtor and Purchaser.

H.     **Business Judgment.** The Debtor's determination that the Agreement, including the form and total consideration to be realized by the Debtor under the Agreement, constitutes the highest or otherwise best offer received by the Debtor for the Property, is fair and reasonable, and is in the best interests of the Debtor, its estate, its respective creditors and all other parties-in-interest, constitutes a valid and reasonable exercise of the Debtor's sounds business judgment.

I.     Consistent with its fiduciary duties, the Debtor has demonstrated sufficient and sound business reasons and justifications for entering into the sale and the performance of its obligations under the Agreement including, but not limited to, the fact that (a) the consideration provided by the Purchaser under the Agreement will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative; and (b) unless the Sale is concluded expeditiously as provided for in the Sale Motion, the Debtor's estate will be harmed and creditor recoveries will be diminished.

J.     Approval of the Agreement and the transactions contemplated by the Agreement including but not limited to the transfer of the Property and the Funding Contribution (the "Transactions") and consummation of the sale at this time is in the best interests of the Debtor and its estate.

K.     **Corporate Authority**.  Subject to the entry of this Order, the Debtor and the Purchaser: (i) has full power and authority to execute the Agreement and all

other documents contemplated thereby, and the sale of the Property has been duly and validly authorized by all necessary action of the Debtor and the Purchaser, respectively; and (ii) has all the power and authority necessary to consummate the sale pursuant to the Agreement.

L.    At closing, the transfer of the Property to the Purchaser pursuant to the Agreement and this Order will be a legal, valid, and effective transfer of the Property and will vest the Purchaser with all right, title, and interest of the Debtor to the Property and be free and clear of liens, claims, encumbrances, and interests, including rights or claims based upon any successor or transferee liability, except for the Permitted Exceptions.

M.    **Consent of Secured Creditor.** Chief Financial Credit Union ("CFCU") asserts a mortgage against the Property located at 380 S. Bates, Birmingham, Michigan (the "Property").

N.    CFCU has consented to the sale of the Property, provided that the proceeds of sale are paid to CFCU at closing in full satisfaction of CFCU's claims. Upon payment of these claims, the Debtor may transfer the Property free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (but subject to the Permitted Exceptions), including rights or claims based on any successor or transferee liability, because section 363(f)(1) of the Bankruptcy Code has been satisfied.

O. **Compelling Circumstances for an Immediate Sale.** To maximize the value of the Property, it is essential that the Transactions occur within the time constraints set forth therein. Time is of the essence in consummating the sale. Accordingly, there is cause to waive the stays contained in Bankruptcy Rules 6004 and 6006.

P. **Releases.** The Agreement is also contingent on mutual releases between and among members, interest holders, and other affiliates and that the release of these claims in furtherance of the Agreement is in the best interest of the bankruptcy estate.

Q. The Purchaser shall have no liability for any obligation of, or claim against, the Debtor or its bankruptcy estate related or unrelated to the Property by reason of the transfer of the Property to the Purchaser.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT**:

1. The Sale Motion is granted in its entirety and the sale of the Property to Purchaser is hereby approved. Any objections, responses or reservations of rights filed or asserted relating to the Sale Motion or sale, to the extent not resolved as set forth herein, settled or waived, are hereby overruled.

2. The Agreement, including all its terms and conditions, all ancillary documents and all Transactions contemplated therein, are hereby approved and

authorized in all respects. If there is any conflict between the Agreement and this Order, this Order shall control.

3.     This Order and the Agreement shall be binding in all respects upon: (i) the Debtor; (ii) all known and unknown creditors of the Debtor, including any holders of liens, claims, encumbrances, or interests; (iii) the Purchaser and its successors and assigns; (iv) all interested parties, their successors and assigns, and (v) any trustees appointed in the Debtor's chapter 11 case or upon the conversion of the case to a case under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection.

4.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate or on any non-consenting party in interest. Any proposed modification, amendment, or supplement that does have a material adverse effect on the Debtor's estate or on any non-consenting party-in-interest shall be subject to further order of the Court, on appropriate notice.

5.     Debtor and Purchaser are authorized and directed to take any and all actions necessary and appropriate to perform under the Agreement and consummate the sale and transfer of the Property and the other Transactions, subject to the terms

of this Order and the Agreement. Without further order of the Court, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary for Debtor and Purchaser to perform under the Agreement and this Order.

6. The Purchaser is a good faith purchaser within the meaning of section 363(m) and, as such, is entitled to the full protections under section 363(m). Accordingly, the reversal, modification or vacatur on appeal of the authorization provided herein to consummate the sale of the Property to Purchaser shall not affect the validity or enforceability thereof, or the obligations or rights granted pursuant to the terms of this Order.

7. The consideration provided by the Purchaser for the Property under the Agreement is fair and reasonable, and the sale may not be avoided under section 363(n).

8. At closing, certain proceeds of sale shall first be paid to CFCU in an amount sufficient to satisfy its mortgages and claims. Upon receipt of payment, CFCU shall promptly discharge its mortgages against the Property. Also at closing, the Debtor may pay its real estate broker, Savills, Inc., its three (3%) percent commission out of the sale proceeds without further Order of the Court. Also at closing, Debtor is authorized to place in escrow at the client trust account of Kerr, Russell and Weber, PLC sufficient proceeds to cover approved fees and expenses to cover Debtor's attorney fees, and the fees and expenses of the Subchapter V Trustee,

Richardo Kilpatrick. No funds shall be paid to Kerr, Russell and Weber, PLC and Mr. Kilpatrick until such payment is approved by the Court after the filing of applications with the Court. Also at closing, the Debtor shall fund the Escrow if applicable pursuant to the Agreement. The remaining balance of the proceeds from the sale shall be held by the Debtor and shall only be disbursed pursuant to further Order of the Court.

9. Notice of the Motion and Sale Hearing was proper, timely, adequate, and sufficient, and complied in all respects with the Bankruptcy Rules and the Local Rules.

10. Except as set forth herein, the sale of the Property to Purchaser shall be free and clear of all claims, liens and encumbrances, obligations, liabilities, and interests to the fullest extent permitted in accordance with 11 U.S.C. §105(a), 363(b) and 363(f), but subject to the Permitted Exceptions (as defined in the Agreement), with all such claims attaching to the proceeds of sale with the same validity, force, priority and effect which they now have against the Property.

11. If any person has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a lien, claim, encumbrance, or interest in the Property (other than Permitted Encumbrances, as defined in the Agreement) and has not delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, release of all liens, claims, encumbrances, or interests, which the person has with respect to the Property or otherwise, then: (i) the Debtor is authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person with respect to the Property; (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests of any kind or nature whatsoever in the Property; and (iii) upon Closing, the Purchaser (or its designee) may seek, as necessary, in this Court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Property

12. Purchaser is not a successor to the Debtor or Debtor's bankruptcy estate by reason of any theory of law or equity, and Purchaser, its affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns shall not assume or in any way be responsible for any liability or obligation of the Debtor or the Debtor's estate, except as expressly provided in the Agreement.

13. Each and every federal, state, local, and foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, and other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Agreement. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the sale.

14. All persons and entities including, without limitation, the Debtor, the Debtor's estate, any and all governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold claims against the Debtor or the Property, arising under or out of, in connection with, or in any way relating to, the Debtor,

the Property, the operation or ownership of the Property by the Debtor before the closing date, or the sale, are hereby prohibited, forever banned, estopped, and permanently enjoined from asserting or pursuing such claims against the Purchaser or its present or future owners, successors, assigns, or property, or the Property.

15. The mutual releases as described in the Agreement between the Debtor and the Purchaser to be executed and delivered pursuant to section 31 therein are hereby approved.

16. With respect to the Agreement, after the Closing: (a) neither the Debtor nor any successor in interest, including any chapter 11 or chapter 7 trustee in these chapter 11 cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute a Permitted Exception (as applicable) without the prior written consent of the Purchaser; and (b) the Purchaser shall have standing to object to any claim against the Debtor and the estate to the extent that, if allowed, it would constitute a Permitted Exception, and the Court will retain jurisdiction to hear and determine any such objections

17. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Consistent with Bankruptcy Rules 6004(h) and 6006(d), there is no just reason for delay in the implementation of this Order. There shall be no stay

as would otherwise exist under Bankruptcy Rule 6004(h), and this Order shall become effective immediately upon entry.

18. Notwithstanding the provisions of Bankruptcy Rules 6004, 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the closing, or risk its appeal will be foreclosed as moot.

19. This Court retains jurisdiction to interpret, implement, and enforce the terms and provisions of this Order and the Agreement to resolve any issues relating to the sale process.

# EXHIBIT 2

## NOTICE AND OPPORTUNITY TO OBJECT

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                              )
                                                    )    Case No.  26-43351-tjt
**THE COMMUNITY HOUSE ASSOCIATION,**  )    Chapter 11
**BIRMINGHAM, MICHIGAN**                   )    Judge Thomas J. Tucker
                                                    )
                  Debtor.                           )
                                                    )
                                                    )

## NOTICE OF DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING THE SALE OF DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS (BUT SUBJECT TO PERMITTED EXCEPTIONS) AND FOR CERTAIN RELATED RELIEF

The Community House Association, Birmingham Michigan ("Debtor") has filed a *Motion for Entry of Order Authorizing the Sale of Debtor's Property Free and Clear of All Liens, Claims, Encumbrances, and Interests (But Subject to Permitted Exceptions) and for Certain Related Relief* (the "Motion"). In the Motion, Debtor seeks authority to sell property located at 380 S. Bates in Birmingham, Michigan to the City of Birmingham (the "City") for $5.2 million in accordance with the Real Estate Purchase Agreement attached to the Motion. Debtor also seeks certain other relief, including approval of releases between the Debtor and the City.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief requested in the Motion, or if you want the court to consider your views on the Motion, within 21 days from the date of service of this Notice (or such other date as ordered by the Court), you or your attorney must:

1. File with the Court a written response or an answer,[1] explaining your position at:

---

[1] Any response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

United States Bankruptcy Court
211 W. Fort Street
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

2.  You must also mail a copy to:

Kerr, Russell and Weber, PLC
Attn: Jason W. Bank and Danielle M. Love
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
jbank@kerr-russell.com
dlove@kerr-russell.com

3.  If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting the relief sought in the Motion.**

Dated: May 20, 2026

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By: /s/ *Jason W. Bank*
Jason W. Bank (P54447)
Danielle M. Love (P86248)
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
(313) 961-0200
jbank@kerr-russell.com
dlove@kerr-russell.com

*Counsel for Debtor and*
*Debtor-In-Possession*

# EXHIBIT 3

## BRIEF IN SUPPORT

(Not applicable)

# EXHIBIT 4

## CERTIFICATE OF SERVICE

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-43351-tjt |
| **THE COMMUNITY HOUSE ASSOCIATION,** | ) | Chapter 11 |
| **BIRMINGHAM, MICHIGAN** | ) | Judge Thomas J. Tucker |
| | ) | |
| Debtor. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Jason W. Bank, certify that on May 20, 2026, I filed the *Debtor's Motion for Entry of Order Authorizing the Sale of Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests (But Subject to Permitted Exceptions) and For Certain Related Relief* (the "<u>Motion</u>") with the Clerk of the Court using the Court's electronic filing system which electronically serviced the following creditors and parties-interest that have appeared in the case as follows:

Jason W. Bank on behalf of Debtor In Possession The Community House Association, Birmingham, Michigan
jbank@kerr-russell.com, nnajor@kerr-russell.com

Brendan G Best on behalf of Interested Party The City of Birmingham, Michigan
bgbest@varnumlaw.com, tachristians@varnumlaw.com

Heather L. Donald on behalf of Creditor State of Michigan Department of Treasury
donaldh@michigan.gov

Timothy Graves (UST) on behalf of U.S. Trustee Andrew R. Vara
Timothy.Graves@usdoj.gov

Brien W Heckman on behalf of Attorney Brien Heckman

heckmanb1@michigan.gov,     MurphyA@michigan.gov;     GeeM1@michigan.gov

Richardo I. Kilpatrick
rkilpatrick@kaalaw.com, MI58@ecfcbis.com

Kurt M. Kobiljak on behalf of Creditor Chief Financial Credit Union
kkobiljak@pck-law.com

Danielle Love on behalf of Debtor In Possession The Community House Association, Birmingham, Michigan
dlove@kerr-russell.com

Jaye Quadrozzi, I on behalf of Interested Party The City of Birmingham, Michigan
jcquadrozzi@varnumlaw.com

I further certify that on May 20, 2026, I caused notice of the Motion to be served on all creditors and parties-in-interest at the addresses set forth on Exhibit A) via first class mail.

Dated: May 20, 2026                 Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By: /s/ *Jason W. Bank*
     Jason W. Bank (P54447)
     Danielle M. Love (P86248)
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226
(313) 961-0200
jbank@kerr-russell.com
dlove@kerr-russell.com
*Counsel for Debtor and Debtor-In-Possession*

## Exhibit A

## Creditor Matrix

Label Matrix for local noticing
0645-2
Case 26-43351-tjt
Eastern District of Michigan
Detroit
Wed May 20 11:12:51 EDT 2026

Alexandra Fus
2289 Mayfair Drive
White Lake, MI 48383-3953

Alexis Johnson
P.O. Box 652
Lapeer, MI 48446-0652

Aline Daniels
c/o Marko Law PLLC Attn: Alexander Waldm
220 w. Congress, 4th Floor
Detroit, MI 48226-3213

Alison Gaudreau
7012 Peninsula Court
Clarkston, MI 48346-1990

Allison Kim
7767 Elm Creek Blvd.
Maple Grove, MN 55369-7041

Allison Kim
7767 Elm Creek Blvd., Suite 210
Maple Grove, MN 55369-7033

Jason W. Bank
Kerr, Russell and Weber, PLC
500 Woodward Avenue
Suite 2500
Detroit, MI 48226-5499

Brendan G Best
Varnum LLP
480 Pierce Street
Ste 300
Birmingham, MI 48009-6019

Brad Wolf
442 S. Old Woodward
Birmingham, MI 48009-6610

Brien Winfield Heckman
Associate Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909-8236

Brien Winfield Heckman Associate Attorney Ge
P.O. Box 30736
Lansing, MI 48909-8236

Brother Rice High School
Attn: Donna Kramer
7101 Lahser Road
Bloomfield Hills, MI 48301-4045

Brother Rice High School
Attn: Geri Dunaway
7101 Lahser Road
Bloomfield Hills, MI 48301-4045

Chief Financial Credit Union
c/o Kurt M. Kobiljak
2915 Biddle Avenue
Ste. 200
Wyandotte, MI 48192-5267

Chief Financial Credit Union Attn: Tom Dluze
200 Diversion Street
Rochester, MI 48307-2207

City of Birmingham
151 Martin Street
Birmingham, MI 48009-3368

Community House Foundation
380 S. Bates Street
Birmingham, MI 48009-1484

Corewell Health Emergency Medicine
Residency Program
Attn: Dustin Hernandez
3601 West 13 Mile Road
Royal Oak, MI 48073-6712

Corewell Health Interventional Radiology
Residency Program
Attn: Heidi Gorske
3601 West 13 Mile Road
Royal Oak, MI 48073-6712

Heather L. Donald
Cadillac Place
3030 W. Grand Blvd.
Suite 10-200
Detroit, MI 48202-6030

Donna Rudofski
3108 Cross Vine Lane
Summerville, SC 29483-8141

Doreen Wright
16055 West 12 Mile Road
Southfield, MI 48076-2909

Elaine Fieldman
350 Woodland Villa Court
Birmingham, MI 48009-1662

Elizabeth Carpenter
1213 Genesee Drive
Royal Oak, MI 48073-4706

Elizabeth Timoszyk
1429 Chesapeake
Royal Oak, MI 48067-4505

Elizabeth Wieske
107 Mark Drive
Mount Clemens, MI 48043-1414

FAR Therapeutic Arts and Recreation
1669 W. Maple Road
Birmingham, MI 48009-1230

Gordon Advisors, P.C. 1301 West Long Lake Ro
Troy, MI 48098-6328

Grace Wolf
615 Kimberly Street
Birmingham, MI 48009-1131

Timothy Graves (UST)
211 W. Fort St.
Suite 700
Detroit, MI 48226-3263

Greg White
14440 Carlisle Street
Detroit, MI 48205-1209

Handyman Services
P.O. Box 21465
Auburn Hills, MI 48321

Hannah Farnung
8875 Birkhill Drive
Sterling Heights, MI 48314-2506

Heather Guise
1424 Dorchester
Birmingham, MI 48009-5902

Brien Heckman
Department of Attorney General
P.O. Box 30736
Lansing, MI 48909-8236

Brien W Heckman
Michigan Department of Attorney General
525 W Ottawa St
5ft Fl Corporate Oversight
P.O. Box 30736, Ste 1
Lansing, MI 48909-8236

Industrial Fasteners Institute
Attn: Maggie Mitchell
6363 Oak Tree Blvd.
Independence, OH 44131-2556

Jana Eckart
151 Martin Street
Birmingham, MI 48009-3368

Jena Blackwell
8421 Warren Blvd.
Center Line, MI 48015-1543

Jennifer Kuczynski
3168 Canna Lily Place
Clermont, FL 34711-9587

Jennifer Zimmerman
32919 Gallo Lane
Warren, MI 48093-8143

Jill Gafken
22927 Linne St.
Clinton Township, MI 48035-2994

Josephine Soliman
3566 San Mateo Road
Waterford, MI 48329-2453

Julie Serra
38546 Arcola Drive
Sterling Heights, MI 48312-1212

Junior League of Birmingham
Attn: Sarah-Grace Motley
220 S. Main Street
Suite 36
Royal Oak, MI 48067-2677

Justin Walker
21700 Northwestern Hwy.
Suite 900
Southfield, MI 48075-4908

Karen Stephens
5358 Abington Drive
Troy, MI 48085-3416

Kathie Ninneman
2630 Douglas Drive
Bloomfield Hills, MI 48304-1735

Kayla Sondey
124 E. Harrington Road
Croswell, MI 48422-1121

Kelvin Colvard Jr.
25805 Stonycroft Drive
Southfield, MI 48033-5891

Kemp Klein Law Firm Attn: Mark R. Flipp
201 W. Big Beaver Road Suite 600
Troy, MI 48084-4161

Richardo I. Kilpatrick
Shermeta, Kilpatrick & Associates PLLC
1030 Doris
Ste 200
Auburn Hills, MI 48326-2613

Kurt M. Kobiljak
Edelson Building, Suite 200
2915 Biddle Avenue
Wyandotte, MI 48192-5267

Kornelia Papas
571 W. Merrill Street
Birmingham, MI 48009-1442

Kristen Nonahal
4242 Normanwood
West Bloomfield, MI 48323-1755

Kyler Williams
25766 Deborah
Redford, MI 48239-1712

Labor & Employment Law Section
State Bar of Michigan Attn: Thomas Davis
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009-5394

Lauren Crummel
2931 Woodslee Drive
Royal Oak, MI 48073-2934

Lauren Johnston
2171 Bacon Avenue
Berkley, MI 48072-1066

Leadership Oakland  
Attn: Shannon Cain  
790 Joslyn Avenue  
2nd Floor  
Pontiac, MI 48340-2918

Lindsey Eliason  
927 Millpond Court  
Northville, MI 48167-1070

Danielle Love  
Kerr Russell and Weber PLC  
500 Woodward Ave  
Ste #2500  
Detroit, MI 48226-5499

Love Team Tessa  
Attn: Karin Prothero  
4462 Samoset  
Royal Oak, MI 48073-6228

Malinda Mansour  
40602 Riverbend Drive  
Sterling Heights, MI 48310-6993

Manveen Saluja  
1767 Alexander Drive  
Bloomfield Hills, MI 48302-1202

Marc Danysh  
261 Golfcrest  
Dearborn, MI 48124-1172

Maria Scarvelis  
36663 Woodward Avenue  
Apt. 104  
Birmingham, MI 48009-0972

Marygrace Dickson  
767 Hanna Street  
Birmingham, MI 48009-3708

Melissa Foster  
1495 Shipman Blvd.  
Birmingham, MI 48009-1933

Michigan Department of Treasury 41300 Dequin  
Sterling Heights, MI 48314-3777

Namita Mohan  
1895 Enterprise Drive  
Troy, MI 48083-1809

Nykia Mitchell  
22434 Avon Lane  
Southfield, MI 48075-4063

Oakland County Bar Association  
Attn: Jennifer Quick  
1760 S. Telegraph Road  
Suite 100  
Bloomfield Hills, MI 48302-0181

Optimist Club  
Attn: Rose Falberg  
31574 E. Bellvine Trail  
Beverly Hills, MI 48025-3705

Pamela Ayres  
1669 West Maple  
Birmingham, MI 48009-1230

Patricia Jerzy  
1802 S. Hill Blvd.  
Bloomfield Hills, MI 48304-1142

Jaye Quadrozzi I  
Varnum LLP  
480 Pierce Street  
Suite 300  
Birmingham, MI 48009-6019

Ramiz Babacic  
2018 Hazel Street  
Birmingham, MI 48009-6807

Reubin Fleming  
19726 Greydale Avenue  
Detroit, MI 48219-1835

Ryan Friedrich  
269 Ridgemont Road  
Grosse Pointe, MI 48236-3131

Samantha Chopp  
2222 E. Farnum  
Royal Oak, MI 48067-2104

Sandra Elias  
2483 Trevor Drive  
Commerce Township, MI 48390-2769

Sarah Schuster  
26305 Lorenz Street  
Madison Heights, MI 48071-3705

Savills, Inc.  
Attn: General Counsel  
399 Park Avenue 11th Floor  
New York, NY 10022-4609

Savills, Inc. Attn: Greg Bockart  
213 Hamilton Row  
Birmingham, MI 48009-3455

Sheila Argue  
312 Highland  
Rochester, MI 48307-1513

Sherry Johnson  
23917 Cass Avenue  
Farmington, MI 48335-3402

Sonny Cohn  
5530 Helmsdale Blvd.  
West Bloomfield, MI 48322-1110

Stan Duschinsky  
6033 Beachwood Drive  
West Bloomfield, MI 48324-1389

State of Michigan
Coporate Oversight Division Attn: Brien
P.O. Box 30736
Lansing, MI 48909-8236

State of Michigan
Corporate Oversight Division Attn: Brien
P.O. Box 30736
Lansing, MI 48909-8236

State of Michigan Department of Labor and Ec
Unemployment Insurance Agency
P.O. Box 169
Grand Rapids, MI 49501-0169

State of Michigan Department of Treasury
3030 W. Grand Blvd., Ste 10-200
Detroit, MI 48202-6030

Tessa Said
1363 Webster Street
Birmingham, MI 48009-7090

The Community House Association, Birmingham,
380 South Bates
Birmingham, MI 48009-1484

Timothy Hunt
5335 Timber Ridge Trail
Clarkston, MI 48346-3860

Tracy Edelman
19861 Maplewood Street
Livonia, MI 48152-2051

Trion Solutions, Inc. 888 W. Big Beaver Road
Troy, MI 48084-4736

Trion Solutions, Inc. 888 W. Big Beaver Suit
Troy, MI 48084-4736

Tyler Trudell
142 S. Avery Road
Waterford, MI 48328-3402

Vangeline Fowler
35645 Old Homestead Drive
Farmington, MI 48335-2032

Varnum LLP
Attn: Kathleen A. Martone Louis F. Ronay
480 Pierce St., Suite 300
Birmingham, MI 48009-6019

Varnum LLP
Attn: Kathleen A. Martone and Louis F. R
480 Pierce St., Suite 300
Birmingham, MI 48009-6019

William D. Seklar
411 South Old Woodward Avenue Suite 1002
Birmingham, MI 48009-6650

YPO Greater Detroit
Chapter Attn: Julianne
Connolly 1016 Bloomview
Circle
Rochester, MI 48307-1728

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Bodman PLC
6th Floor at Ford Field 1901 St. Antioin

(u)City of Birmingham
151 Martin Street Clerk's Office Birming

(d)Community House Foundation
380 S. Bates Street Birmingham, MI 48009

(u)Kerr, Russell and Weber

(u)MICHIGAN DEPARTMENT OF TREASURY/BANKRUPTCY

(u)The City of Birmingham, Michigan

(u)Andrew R. Vara

End of Label Matrix
Mailable recipients    105
Bypassed recipients      7
Total                  112

# EXHIBIT 5a

## DECLARATION OF ALISON GAUDREAU

In re:

**THE COMMUNITY HOUSE ASSOCIATION,
BIRMINGHAM, MICHIGAN,**

      Debtor.

Case No. 26-43351
Chapter 11
Hon. Thomas J. Tucker

## DECLARATION OF ALISON GAUDREAU

I, Alison Gaudreau, state:

1.    I am the President of The Community House Association, Birmingham, Michigan (the "Debtor"). I am the authorized representative for the Debtor and Debtor-In-Possession.

2.    In my capacity as President, I am familiar with the Debtor's business and operations and have been intimately involved with the bankruptcy case since it was filed on March 26, 2026 (the "Petition Date").

3.    Unless otherwise stated, this Declaration is based upon my personal knowledge. I am familiar with the facts and circumstances set forth in this Declaration, and I am in all respects competent to make this Declaration in support of the *Debtor's Motion for Entry of Order Authorizing the Sale of Debtor's Property Free and Clear of All Liens, Claims, Encumbrances, and Interests (But Subject to Permitted Exceptions) and for Certain Related Relief* (the "Sale Motion") filed by the Debtor. If

1

called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. The Debtor is the owner of certain real property located at 380 South Bates Street, Birmingham, Michigan 48009 (the "Property"), where it operates a banquet facility and early education child center.

5. As stated in my First Day Declaration in Support of Debtor's Chapter 11 Petition and First Day Motions ("First Day Declaration", Doc 6), in recent years, decreased revenues and increased costs of operations and maintaining the Property have rendered ongoing operations unprofitable and unsustainable, and the Debtor anticipated running out of cash to support its ongoing operations by June 30, 2026.

6. The Debtor's financial condition and financial projections have not materially changed since the submission of the First Day Declaration. It is still anticipated that the Debtor will run out of cash and be unable to continue operations after June 30, 2026.

7. Accordingly, it is critical that the Debtor close on a sale of the Property by June 30, 2026.

8. Prior to the Petition Date, the Debtor retained Savills Inc. ("Savills") as its real estate broker to market the Property to prospective buyers.

9. I communicated regularly with Savills and the Debtor's Board of Directors regarding the sale process.

10. The Debtor was able to secure an offer from the City to purchase the

2

4900-7433-9243, v. 1

Property for $5.2 million (the "Proposed Sale").

11.     The Proposed Sale of the Property to the City results in a value-maximizing transaction with proceeds anticipated to be sufficient to satisfy all allowed claims in full, including secured creditors and unsecured creditors, with any remaining proceeds to be permanently endowed to support the Debtor's charitable mission.

12.     Accordingly, I believe that the Proposed Sale is in the best interests of the Debtor, its creditors, and all other parties-in-interest.

13.     Pursuant to 28 U.S.C. 1746, I declare to the best of my knowledge, under penalty of perjury, that the foregoing statements are true and correct.

By: _____
Alison Gaudreau

Dated: May 19. 2026

4900-7433-9245, v. 1

**<u>EXHIBIT 5b</u>**

**DECLARATION OF GREGORY BOCKART IN SUPPORT OF
DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING
THE SALE OF DEBTOR'S REAL PROPERTY FREE AND CLEAR
OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
AND FOR CERTAIN RELATED RELIEF**

Docusign Envelope ID: 07FCC706-0DE1-8182-80B9-9E1B7B326C27

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-43351-tjt |
| **THE COMMUNITY HOUSE ASSOCIATION,** | ) | Chapter 11 |
| **BIRMINGHAM, MICHIGAN** | ) | Judge Thomas J. Tucker |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF GREGORY BOCKART IN SUPPORT OF**
**DEBTOR'S MOTION FOR ENTRY OF**
**ORDER AUTHORIZING THE SALE OF DEBTOR'S REAL PROPERTY**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND**
**INTERESTS AND FOR CERTAIN RELATED RELIEF**

I, Gregory J. Bockart, Jr., state:

1.      I am Vice Chairman of Savills Inc., a real estate brokerage firm ("Savills").

2.      Unless otherwise stated, this Declaration is based upon my personal knowledge. I am familiar with the facts and circumstances set forth in this Declaration, and I am in all respects competent to make this Declaration in support of the *Debtor's Motion for Entry of Order Authorizing the Sale of Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests and for Certain Related Relief* (the "Sale Motion") filed by The Community House Association, Birmingham, Michigan ("Debtor"). If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

4921-2904-7977, v. 2

3. Prior to the Petition Date[1], Savills was retained as the Debtor's real estate broker in connection with the marketing and potential sale of Debtor's real property located at 380 S. Bates, Birmingham, Michigan (the "Property").

4. I am the individual at Savills primarily responsible for completing Savills' engagement with the Debtor.

5. In November 2025, the City of Birmingham (the "City") filed a lawsuit against the Debtor alleging that the Debtor was attempting to violate certain deed restrictions or conditions in connection with the potential sale of the Property (the "Lawsuit").

6. As a result of Savills' marketing efforts in 2025, the Debtor received an offer from the United Jewish Foundation to purchase the Property for $7.3 million.

7. The United Jewish Foundation's offer was contingent upon the City dismissing the Lawsuit against the Debtor.

8. The City did not dismiss the Lawsuit and the United Jewish Foundation subsequently withdrew its offer.

9. Since the Petition Date, the Savills marketing team has continued to market the Property primarily to non-profit organizations.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

2

4921-2904-7977, v. 2

10. The Debtor was able to secure an offer from the City to purchase the Property for $5.2 million (the "Sale").

11. I believe the marketing efforts to sell the Property was fulsome and resulted in the highest and best price for the Debtor's Property in light of the deed restrictions or conditions alleged in the City's Lawsuit.

12. As a result, I believe that the Sale is fair, adequate, and reasonable under the circumstances and, as such, I believe the Sale to the City is in the best interests of the Debtor, its creditors, and all other parties-in-interest.

13. Pursuant to 28 U.S.C. 1746, I declare to the best of my knowledge, under penalty of perjury, that the foregoing statements are true and correct.

By:_____ _Signed by:_ Gregory J. Bockart, Jr.
DF8337654945427...
Gregory J. Bockart, Jr.

Dated: May 20, 2026

3

4921-2904-7977, v. 2

# EXHIBIT 6a

## REAL ESTATE PURCHASE AGREEMENT

<u>**REAL ESTATE PURCHASE AGREEMENT**</u>

This Real Estate Purchase Agreement (this "Agreement") is made and entered into as of the Effective Date (as that term is defined below), by and between **The Community House Association, Birmingham, Michigan,** a Michigan nonprofit corporation with an address of 380 S. Bates Street, Birmingham, Michigan 48009 (the "Seller"), and **The City of Birmingham**, on behalf of a nonprofit entity to be formed, with an address of 151 Martin Street, Birmingham, Michigan 48009 (the "Purchaser"). Purchaser and Seller are each a "Party" and are together referred to herein as the "Parties."

Seller agrees to sell and Purchaser agrees to purchase the following parcel of land situated in the City of Birmingham, County of Oakland, State of Michigan, commonly known as 380 S. Bates Street, Birmingham, Michigan 48009 (the "Property"), together with all tenements, hereditaments, rights, easements and privileges belonging or in any way appertaining to the Property, including any mineral rights, water rights, air rights, if any, and all fixtures, improvements, and appurtenances, and to pay therefor a sum equal to: Five Million Two Hundred Thousand and 00/100 Dollars ($5,200,000.00) (the "Purchase Price") upon the conditions set forth herein.

1.      **Deposit.**  Purchaser will deposit, within five (5) business days after the Effective Date, the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) as an earnest money deposit (the "Deposit") with ATA National Title Group, Seaver Title Division, Attn: David Barris (the "Title Company"). The Deposit shall only be refundable to Purchaser upon Seller's default, Seller's failure to timely satisfy a condition precedent to Closing that is the Seller's responsibility hereunder (including, without limitation, with respect to curative title or survey matters), a casualty or condemnation event affecting the Property, or any other event set forth in this Agreement that entitles the Purchaser to a refund of the Deposit (collectively, "Refund Events").

2.      **Closing.**  The closing (the "Closing") of this sale will take place *via* escrow or at the office of the Title Company on June 30, 2026, or such earlier date as agreed upon by Purchaser and Seller following conclusion of Seller's June events, but in no event prior to satisfaction or waiver by Purchaser of all conditions and contingencies contained in this Agreement.

3.      **Deed.**  At Closing, Seller will deliver to Purchaser a covenant deed in proper form for recording, duly executed, witnessed, and acknowledged, and insured by the Title Company, so as to convey to Purchaser the fee simple title to the Property, subject only to the Permitted Exceptions.  The term "Permitted Exceptions" shall mean only the following interests, liens, and encumbrances: (a) liens for ad valorem taxes not payable on or before Closing, and (b) other matters determined to be acceptable by Purchaser during the Due Diligence Period, as contemplated by Paragraph 5 of this Agreement ("Title Matters"). The Permitted Exceptions shall not include any standard Schedule B-II exceptions, liens, leases, or monetary encumbrances. For clarity, the terms and conditions of the Trust Deed recorded at Liber 761, Page 380, Oakland County Records and the Quit-Claim Deed and Oakland County Probate Court Order appended thereto recorded at Liber 11349, Page 661, Oakland County Records and the Lis Pendens recorded by the Purchaser at Liber 60637, Page 373, Oakland County Records shall be Permitted Exceptions. Payment of the Purchase Price will be made by immediately available federal funds.

4.      **Evidence of Title.**  As evidence of title and within five (5) days after the Effective Date, Seller will obtain, at Seller's cost, a commitment for an ALTA Owner's Policy of title insurance (the "Title Commitment") issued by the Title Company in the amount of the Purchase Price and without standard exceptions, bearing a date later than the Effective Date and guaranteeing the title in the condition required under this Agreement.  Purchaser will cause the Title Company to issue at Closing a marked-up commitment or *pro forma* owner's policy with respect to the Property naming Purchaser as the insured. At Purchaser's election, Purchaser shall be responsible for providing any survey certified to Purchaser, Seller and the Title Company to remove any survey exception.  As soon as possible after the Closing, Purchaser will cause the Title Company to furnish to Purchaser an ALTA owner's extended policy of title insurance with respect to the Property, at Seller's expense (the "Title Policy").

5.      **Title Objections.**  Not later than ten (10) days following Purchaser's receipt of the last of (i) the Commitment, and (ii) a survey (which Purchaser shall notify Seller within ten (10) days of the Effective Date that it has ordered, or elected not to obtain), Purchaser shall have the right to object to any matter of title or survey. If timely objection to a matter reflected in the title commitment or survey is made, Seller will have ten (10) days from

the date Seller is notified in writing of the particular defect(s), either (a) to remedy the defect(s) in a manner acceptable to Purchaser in its sole and absolute discretion, (b) to obtain title insurance over such defect(s) satisfactory to Purchaser, or (c) to advise Purchaser that it will not or cannot remedy such defects. If Seller is unable or unwilling to remedy the defect(s) or to obtain title insurance over such defect(s), then Purchaser may, at its option, upon written notice to Seller, (x) terminate this Agreement and the Purchaser will receive a refund of the Deposit and neither Seller nor Purchaser will have any further obligation to the other except as otherwise provided herein, (y) reduce the Purchase Price by the amount by which Purchaser and Seller mutually agree represents the value of such Property reduced by said objectionable item(s) (neither party will be obligated to agree to a value) and proceed to Closing according to the terms hereof, or (z) waive such defect(s) and proceed to Closing according to the terms hereof. If Seller remedies the specified objections or obtains title insurance over such defects within the time specified, Purchaser agrees to complete the transaction as provided herein, subject to the satisfaction of all conditions and contingencies under this Agreement. Seller acknowledges that it must discharge at Closing, at its cost, any mortgage or other monetary encumbrances or liens, pay any outstanding violation fees or invoices, and terminate any leases which encumber the Property, if any. If the Title Commitment is amended or supplemented after Purchaser has submitted its objections, the same time periods, procedures and notices for objections and clearance of title shall apply to matters disclosed thereby. Purchaser may supplement Purchaser's objections to title and/or survey with any new or later discovered conditions, defects, encroachments or other objections to title or survey which are not acceptable to Purchaser. If Purchaser makes any such objections the terms of this Paragraph shall apply as if Purchaser made any such objection prior to the expiration of the Due Diligence Period.

6.    **Survey**. Purchaser may obtain, at Purchaser's sole cost and expense, a survey of the Property (the "Survey"). The legal description from the Survey, if obtained, will be used in all conveyancing documents with respect to the Property.

7.    **Inspections.** Purchaser and its designees will have until 5:00 PM on June 15, 2026 (the "Due Diligence Period") to review and inspect all physical aspects of the Property, including an inspection of the building(s) and environmental testing and borings (collectively, the "Inspections"). Within five (5) days of the Effective Date Seller shall provide Purchaser with copies with all reports in its possession from any prior inspections including but not limited to environmental inspections or testing. Seller will cooperate with Purchaser regarding the Inspections and will consent to the submission of plans, applications, and the like as required by Purchaser, and Seller will execute and submit all necessary and appropriate instruments in connection therewith. Purchaser shall indemnify, defend, protect and hold Seller harmless from any loss, injury or damage suffered or incurred by Seller to the extent caused by Purchaser in the conduct of the Inspections. Within the Due Diligence Period, Purchaser may, in its sole discretion, for any reason, elect whether or not to go forward with this Agreement to Closing, which election shall be made by notice to Seller given within the Due Diligence Period. Purchaser's termination notice shall describe the reasons for such termination. If such notice not to go forward is timely given, this Agreement and all rights, duties and obligations of Purchaser and Seller hereunder shall terminate. Notice will be deemed effective on the date deposited with a recognized overnight courier service or upon delivery *via* electronic mail to the addresses provided below. Seller agrees to provide access to the Property to Purchaser and its designees from and after the Effective Date upon prior notice from Purchaser and on the terms and conditions set forth in this Paragraph. Purchaser has the right to a final walkthrough of the Property 24 hours prior to Closing to confirm that the Property and its contents remain in the condition required hereunder.

Prior to any third party engaged by Purchaser accessing the Premises to conduction Inspections, Purchaser shall cause such third party shall provide to Seller with a certificate of insurance to be held by Seller evidencing that policies of insurance for bodily injury, death or property damage liability coverages in amounts not less than One Million and 00/100 ($1,000,000.00) Dollars combined single limit), and an excess/umbrella liability coverage in an amount not less than Two Million and 00/100 ($2,000,000.00) Dollars shall be in effect with respect to Purchaser. Such policies must be written on an occurrence basis so as to provide blanket liability and broad form property damage coverage, and shall name Seller as an additional insured on the liability insurance certificate. In addition, Purchaser shall cause any such third party shall correct any damage done to the Property as a result of its conducting such Inspections. The provisions of this Section shall survive both (i) the Closing and the recordation of the Deed and shall not be deemed merged into the Deed upon its recordation, and (ii) any termination of this Agreement.

8. **Possession.** Seller will deliver exclusive possession of the Property at Closing to Purchaser, free and clear of all tenants, other possessory or occupancy rights, and liens or encumbrances other than the Permitted Exceptions. Seller will deliver to Purchaser all keys, cards, and access and security codes to the Property at Closing. To the extent any personal property of Seller remains on the Property after Closing, such personal property shall be deemed abandoned by Seller and will be the property of Purchaser.

9. **Taxes and Prorated Items.** There will be no closing prorations or adjustments. Seller will pay all operating expenses and utility charges through the Closing Date, and Purchaser will assume all maintenance and operating costs and expenses from and after the Closing Date.

10. **Seller's Representations.** All representations are deemed made to "Seller's knowledge" which is the actual knowledge of Alison Gaudreau, President of Seller, without inquiry. Subject to the foregoing, Seller represents and warrants to Purchaser as follows:

(a) from the Effective Date to the Closing, Seller will not transfer all or any portion of the Property nor enter into any "backup" agreement for the sale of the Property, renew any lease nor create any new lease, nor create any easement, liens, mortgages or encumbrances on the Property;

(b) Seller is the sole fee simple owner of the Property and no leases or mortgages affect the Property which will not be terminated or discharged as of the date of Closing;

(c) this Agreement and all documents executed by Seller will be duly authorized, executed and delivered by Seller and are legal, valid and binding obligations of Seller;

(d) Omitted;

(e) Seller is not a "foreign person" (as defined in the Internal Revenue Code, Section 1445(F)(3)) and the sale of the Property is not subject to any withholding requirements imposed by the Internal Revenue Code or other law;

(f) except as previously disclosed to Purchaser, there are no pending or threatened condemnation involving the Property, and Seller has received no notice from any governmental agency or authority or other potential condemnor concerning any right-of-way, utility or other taking which may affect the Property;

(g) there is no pending violation of environmental or health laws, nor has Seller received any notice of correction, the failing of which would result in such violation;

(h) The Property presently complies with all applicable environmental laws. The Property does not now contain and has not contained any underground storage tanks or material amounts of hazardous materials, as defined under any environmental law, in violation of any environmental law. Seller has not used Hazardous Materials at the Property in violation of applicable environmental laws; and

(i) As of the Effective Date, there are no leases, options, contracts, or rights of third parties affecting the Property.

This Paragraph will be true and correct in all material respects on the Effective Date and on the date of Closing.

11. **Purchaser's Representations.** Purchaser represents and warrants to Seller that this Agreement and all documents executed by Purchaser in connection with the transaction contemplated by this Agreement have been and will be duly authorized, executed and delivered by Purchaser and are legal, valid and binding obligations of Purchaser. This Paragraph will be true and correct in all material respects on the date of Closing.

12. **Reserved**.

13. **Reserved**.

14. **Payment of Fees/Closing Costs.** Seller will be responsible for the payment of any and all transfer taxes related to the conveyance of the Property, the premium for the Title Policy, the brokerage commission payable to any broker, Seller's attorney fees, and one-half (1/2) of the closing costs charged by the Title Company. Purchaser will be responsible for the cost of the Survey, if any, the Inspections, one-half (1/2) of the closing costs charged by the Title Company, the premium for any endorsements to the Title Policy requested by Purchaser (other than those necessary to cure any title or survey objections, which shall be the responsibility of Seller), Purchaser's attorney fees, and the recording fee for the covenant deed. At Closing, Purchaser and Seller will execute any documents and affidavits required by the Title Company or which are normally and customarily required in a transaction of this type, including an owner's affidavit. All other costs and fees in connection with the transaction contemplated by this Agreement shall be the responsibility of the party that is customary and standard for commercial real estate transactions in Oakland County, Michigan.

15. **Purchaser's Default.** In the event of default by Purchaser, which default remains uncured for a period of ten (10) days after Purchaser's receipt of written notice from Seller, Seller may, as its sole and exclusive remedy, elect to declare a forfeiture hereunder whereupon the Deposit will be paid to Seller as agreed-upon, bargained-for liquidated damages, and neither Party will have any further obligations to the other, except as otherwise set forth in this Agreement.

16. **Seller's Default.** In the event of default by Seller, which default remains uncured for a period of ten (10) days after Seller's receipt of written notice from Purchaser, Purchaser may, at its option, either (a) pursue its legal and equitable remedies, including specific performance of this Agreement, or (b) terminate this Agreement in which event the Deposit will be returned to the Purchaser in full termination of this Agreement and neither party will have any further obligations to the other, except as otherwise set forth in this Agreement.

17. **Assignment/Successors.** Purchaser may assign this Agreement without the prior consent of Seller. The covenants contained in this Agreement will bind and inure to the benefit of the heirs, personal representatives, successors, successors-in-interest and assigns of the respective parties.

18. **Risk of Loss/Condemnation.** Until the transfer of title on the date of Closing, Seller has the risk of loss or damage to the Property. If any loss or damage occurs prior to the transfer of title on the date of Closing, Purchaser may, at its option, either (a) cancel this Agreement and the Purchaser will receive a refund of the Deposit, or (b) continue under this Agreement, with all insurance proceeds with respect to the Property being assigned and paid to Purchaser. If all or any part of the Property is condemned or any condemnation action or proceeding is commenced prior to the transfer of title on the date of Closing, Purchaser may, at its option, either (y) cancel this Agreement and Purchaser will receive a refund of the Deposit, or (z) complete the purchase, with all condemnation proceeds and claims with respect to the Property being assigned to Purchaser.

19. **Notices.** Any notice, demand, or other communication required to be given or to be served upon any Party hereunder shall be in writing and delivered to the person to whom the notice is directed, either: (i) in person; (ii) delivered by delivery service (including any express mail or overnight delivery service); or (iii) sent by electronic mail. Any notice given by overnight delivery service for next business day delivery shall be deemed given on the date of deposit with the overnight carrier for next business day delivery. Any notice, demand, or other communication given other than by overnight carrier shall be deemed to have been given and received when delivered (if by electronic mail, as evidenced by the date such electronic mail is sent) to the address of the Party to whom it is addressed as stated below.

For purposes of Notice, the addresses of the Parties shall be as follows:

If to Seller:                   The Community House Association, Birmingham, Michigan
                                    380 S. Bates Street
                                    Birmingham, MI 48009
                                    Attn: Alison Gaudreau
                                    Email Address: agaudreau@communityhousehelps.org

|                    |                                                              |
|--------------------|--------------------------------------------------------------|
| with a copy to:    | Kerr, Russell & Weber, PLC                                   |
|                    | 500 Woodward Avenue, Suite 500                               |
|                    | Detroit, MI  48226                                          |
|                    | Attn:    C. David Bargamian or Jason Bank                   |
|                    | Email Address:  dbargamian@kerr-russell.com; jbank@kerr-russell.com |
|                    |                                                              |
| If to Purchaser:   | City of Birmingham                                          |
|                    | 151 Martin Street                                           |
|                    | Birmingham, Michigan 48009                                  |
|                    | Attention: Jana Ecker, City Manager                         |
|                    | Email Address: jecker@bhamgov.org                           |
|                    |                                                              |
| with a copy to:    | Varnum LLP                                                  |
|                    | 480 Pierce Street, Suite 300                                |
|                    | Birmingham, Michigan 48009                                  |
|                    | Attention: Kathleen Martone                                 |
|                    | Email Address: kamartone@varnumlaw.com                      |

20. **Counterparts.**  This Agreement may be executed in a number of identical counterparts, each of which for all purposes is deemed an original, and all of which constitute collectively one and the same agreement. This Agreement may be executed by the exchange of signature pages sent by facsimile or electronic mail which will be deemed binding upon Purchaser and Seller, with originals to follow upon request.  This Agreement may be executed through the use of electronic signature software, such as DocuSign.

21. **Brokers.**  Seller and Purchaser represent to each other that other than with respect to Savills, who represents Seller, they have no obligations or agreements relating to commissions or finder's fees for the sale of the Property. Seller and Purchaser each agree to hold each other harmless from any such demands, claims, payments (including attorney's fees and costs) related to commissions or finder's fees in the event of a breach of this Paragraph. Seller will be responsible for paying any court-approved real estate commissions to Savills.  The provisions of this Paragraph will survive the Closing or other termination of this Agreement.

22. **Exclusivity.**  From and after the Effective Date, Seller and its affiliates, owners, and principals may not, indirectly or directly, through any manager, director, officer, agent, financial adviser, or otherwise, solicit, initiate, or encourage submission of proposals or offers related to any acquisition or purchase of the Property or any equity interest in Seller or its affiliates.  Neither Seller nor its affiliates will participate in any negotiations regarding, or furnish to any other person, any information with respect to, or otherwise cooperate in any way with, or assist or participate in, facilitate or encourage, any effort or attempt by any other person to do or seek any of the foregoing.

23. **Effective Date.** The term "Effective Date" shall mean the day that the last party hereto signs this Agreement and delivers the fully executed Agreement to the other party.

24. **Confidentiality.**  Seller and Purchaser will, prior to the Closing, keep all non-public information regarding this Agreement and the other Party strictly confidential, except as may be required by law or in connection with any enforcement proceedings, including, without limitation, any lawsuit between the Parties.  No press release or other public announcement related to this Agreement or the transactions contemplated hereby will be issued by any Party hereto without the prior approval of the other Party. Nothing in this Paragraph shall prohibit any Party from disclosing any such information to its attorneys, accountants, consultants, or lenders. In addition, it shall not be a violation of this provision for Purchaser to make application at any time from and after the Effective Date for any governmental approvals or applications required by Purchaser.

25. **Severability**.  The invalidation of any one or more of the provisions of this Agreement by judgment or court order will in no way affect the validity of any of the other provisions of this Agreement and the same will remain in full force and effect.

26. **Time.** In computing any period of time prescribed by the terms of this Agreement, the day from which the designated period of time begins to run will not be included. The last day of the period so computed will be included unless it is a Saturday, Sunday, or legal holiday (i.e., not a business day), in which event the period will run until the next business day. In the event any day on which any act is to be performed by Seller or Purchaser under the terms of this Agreement is not a business day, the time for the performance of any such act will be extended to the next day which is a business day.

27. **Division of Endowment.** The parties acknowledge and agree that The Community Foundation for Southeast Michigan ("CFSEM") holds an endowment for the benefit of Seller to support the charitable purposes of The Community House of Birmingham (the "Endowment"). Seller is a beneficiary of the Endowment but does not own or have any rights or control over the Endowment. Ownership and control of the Endowment and distributions therefrom is vested in CFSEM. Within five (5 ) days after the Effective Date, Seller shall execute and deliver to CFSEM a letter (the "Endowment Division Letter") requesting that, upon Closing, CFSEM divide the Endowment into two separate endowments: (i) one endowment for the continuing benefit of Seller (the "Seller Endowment") and (ii) one endowment for the exclusive benefit of Purchaser (or the foundation to be created by it) to support the maintenance of the Property (the "Purchaser Endowment"). The letter will request that the Seller Endowment and the Purchaser Endowment each hold fifty percent (50%) of the then-current value of the Endowment (the "Division Value"). The requested division of the Endowment as set forth herein is referred to as the "Requested Division". Failure to timely deliver the Endowment Division Letter shall be a Seller default hereunder. Seller shall fully and diligently support the Requested Division and shall provide all cooperation, documentation, information, and assistance necessary to consummate the Requested Division. Seller shall respond to any requests for such cooperation within ten (10) business days of receipt of a request therefor. Failure to timely respond to any such request, either prior to Closing or during the Post-Closing Endowment Division Period (as that term is defined below), if applicable, will be a Seller default.

28. **Closing Escrow for Division of Endowment.** The parties intend that CFSEM's approval of the Requested Division occur prior to the Closing Date; provided, however, that in the event that the Requested Division does not occur prior to the Closing Date, an amount equal to the Purchaser's Division Value shall be withheld from the Purchase Price and placed in escrow with the Title Company pursuant to the terms hereof (the "Endowment Escrow"). The parties agree that they shall continue to work diligently and in good faith with CFSEM to consummate the Requested Division for a period beginning on the Closing Date and ending on the date that is the later to occur of (a) ninety (90) days after the Closing Date (as may be extended by written agreement of the parties in their sole discretion), or (b) the date that all required approvals for the Requested Division have been obtained (the "Post-Closing Endowment Division Period"). If the Requested Division is approved by CFSEM's board of trustees during the Post-Closing Endowment Division Period, Title Company shall release the Endowment Escrow to Seller. If the Requested Division is not completed prior to the expiration of the Post-Closing Endowment Division Period or CFSEM fails to approve the Requested Division, then,

    a. Purchaser shall, within thirty (30) days following the expiration of the Post-Closing Endowment Division Period or the date that CFSEM issues a written notice of denial of the Requested Division, establish a donor advised fund at CFSEM in accordance with CFSEM's standard policies and governing documents (the "Alternate Fund"); and

    b. The Purchaser shall serve as the donor advisor with respect to the Alternate Fund, with the authority to recommend distributions therefrom in accordance with CFSEM's policies; and

    c. If the Alternate Fund is established, within ten (10) business days following establishment of the Alternate Fund, Title Company shall release the Endowment Escrow directly to the Alternate Fund; and

    d. For clarity, the Seller shall remain he sole beneficiary of the Endowment, free and clear of any claim thereto by Purchaser.

29. **Property Condition; Personal Property.** Except as set forth in this Agreement, Purchaser and Seller acknowledge and agree that Purchaser is acquiring the Property in its as-is condition. Notwithstanding the foregoing, Seller agrees that it shall maintain the Property, including all of its contents, in substantially the same condition as they exist on the Effective Date hereof. For the avoidance of doubt, Seller shall not remove, strip, relocate, or dispose of any plaques, artwork, the commercial kitchen, catering, or banquet equipment, or any items used to maintain the early childhood center (the "ECC") and banquet center ("Banquet Center") operations on the

Property; provided, however, that employees of Seller shall have the right to remove their personal property (e.g., personal items of ECC employees, and knives of the culinary staff at the Banquet Center). Furthermore, the sale of the Property shall include the conveyance by Seller of the name "Birmingham Community House", the Marshall Fredericks sculptures currently located on the property, all books and records related to the operation and maintenance of the Property, including ECC and Banquet Center employee rosters, operating expense history, vendor contracts, and donor records regarding gift restrictions. At Closing, the Seller will convey such personal property by quitclaim bill of sale, and Purchaser shall release Seller from all claims and liabilities concerning such property at Closing. All items of personal property that are not included in the sale of the Property are identified on attached Exhibit A.

30. **Post-Closing Covenants.** Purchaser agrees that post-Closing it will maintain the Marshall Fredericks sculptures, Miller Tribute Terrace and donor wall in their current locations at the Property, subject to reasonable Property-related conditions, legal requirements, and other conditions that may impact the ability to maintain such items in their current locations. This covenant shall survive Closing and recordation of the Covenant Deed.

31. **Closing Obligations.** At Closing, the parties will execute and deliver to each other mutual releases and waivers of all claims, including any claims or counter-claims that were, or could be brought in the pending lawsuit in the Oakland County Circuit Court, Case No. 25-219218-CB (the "Lawsuit"), against each other and their respective officers, directors, commissioners, employees, agents, successors and assigns. Simultaneously with the closing, the parties shall file with the Oakland County Circuit Court a dismissal of the Lawsuit with prejudice.

32. **Use and Occupancy Plan.** Purchaser intends to use the Property for the benefit of the residents of the City of Birmingham consistent with the deed restrictions governing the Property, and intends to and will make best efforts to continue providing a childcare center and other current services and programming currently offered by Seller. Seller shall cooperate with Purchaser to facilitate discussions and perform other work necessary and related to the preservation, stabilization, and transition of the Banquet Center and ECC to the extent reasonably requested by Purchaser. The Purchaser will make best effort to offer employment to such of Seller's existing staff as required including subject to operational conditions and requirements.

33. **Bankruptcy Sale.** The parties acknowledge and agree that the transaction contemplated by this Agreement is being performed through a private sale process under Section 363 of the United States Bankruptcy Code overseen by the United States Bankruptcy Court in Seller's pending Chapter 11 proceeding, Case No. 26-43351 (the "Bankruptcy Court"). On or before one (1) business day after the Effective Date, Seller will prepare and file necessary pleadings (the "Motion") seeking Bankruptcy Court approval of the transaction contemplated by this Agreement. The transaction contemplated by this Agreement is contingent upon Bankruptcy Court approval.

34. **Entire Agreement.** This Agreement contains the entire agreement between Seller and Purchaser, and there are no other terms, conditions, promises, undertakings, statements or representations, either written or oral or express or implied, concerning the sale contemplated by this Agreement. This Agreement may be amended only by an instrument in writing signed by both Seller and Purchaser.

*[Signatures appear on following page]*

**PURCHASER:**

**The City of Birmingham, on behalf of an entity to be formed,**

By: CLYNTON BAXTER

Its: MAYOR

Date: MAY 19, 2026 , 2026

**SELLER:**

**The Community House Association, Birmingham, Michigan,**
a Michigan nonprofit corporation

By: Alison Gaudreau

Its: President

Date: May 19, 2026

**EXHIBIT A**

Excluded Personal Property

The following office furniture and equipment:

a. Three (3) L-shaped desks including cubicle/partition walls, drawers, and two (2) -drawer file cabinets
b. Three (3) desk chairs
c. Three (3) lamps
d. Three (3) laptop computers and docking stations
e. Six (6) computer screens
f. Three (3) keyboards and mice
g. One (1) five (5)-drawer file cabinet
h. Six (6) free standing three (3)-drawer file cabinets
i. One (1) conference table
j. Ten (10) conference chairs
k. One (1) small fridge
l. Two (2) printers
m. One (1) folding machine
n. One (1) small table
o. One (1) wall-mounted TV
p. One (1) wall-mounted mirror

# EXHIBIT 6b

## DEED OF TRUST

# DEED OF TRUST

THIS AGREEMENT, made the 16th day of _January_
A. D. 19 30, between the BIRMINGHAM COMMUNITY HOUSE ASSOCIATION, a
corporation organized and existing under and by virtue of Section
II, Chapter 1, Part 1 of Act No. 84, of the Public Acts of Michigan
for 1921, and having its place of business in the Village of
Birmingham, Oakland County, Michigan (herein called the "Settlor",)
and ROLLA J. CORYELL, CLARENCE VLIET, RUTH SHAIN, CHARLES RANDALL
and HENRY HART, all of the said Village of Birmingham (herein
called the "Trustees")

WITNESSETH:

WHEREAS the Settlor was duly incorporated according to
law for the following purpose or purposes:

"To encourage, engage in and carry on social,
philanthropic, and civic activities among and
for the residents of the Village of Birmingham,
Michigan, and to provide and maintain a center
therefor by acquiring, leasing, purchasing, im-
proving and maintaining adequate real and per-
sonal property;"

and

WHEREAS the said corporation is the owner and is in pos-
session of the following described property:

"Lots 94, 95, 96, Merrill Plat, Village of
Birmingham, Oakland County, Michigan,"

and

WHEREAS the said corporation is to be financed by the
public and private solicitation of funds or donations from and by
the residents of the said Village of Birmingham, and adjacent
vicinities, but confined within the County of Oakland; and

WHEREAS the qualifications required of officers and
members are the subscriptions of $1.00 or more to the work of the
said Settlor; and

WHEREAS the Settlor has by the regular action of its
membership voted to erect a suitable building on the above describ-
ed property and the cost thereof to be financed and paid from past
and future public and private solicitation of funds or donations, and

- 1. -

381

WHEREAS it is the desire of the Donors that the said property and the building to be erected thereon and any and all future buildings erected thereon by the Settlor shall be used only for the purpose or purposes set forth in its Articles of Association, and that in the event of the dissolution of the said corporation following the abandonment for any reason of the purpose or purposes for which it was formed, then all of the said land and the improvements thereon be quit claimed and conveyed to a charitable, benevolent and educational organization in the said Village of Birmingham, now existing or organized in the future to be selected by the Trustees herein or their duly elected or appointed successors or leased by them for a nominal rental to the said Village of Birmingham or its successor municipality to be used by it for a community center for the benefit of the public, and

WHEREAS in pursuance of the foregoing the Settlor did, on the 7th day of May, 1928, by the unanimous vote of its Board of Directors, create a board of five trustees, to consist of (1) A member of the Birmingham Public Library Board; (2) A member of the Birmingham School Board (known as School District No. 1 Fractional Bloomfield;) (3) A member of the Birmingham Community House Executive Board; (4) An officer of the Detroit and Security Trust Company; and (5) An officer of a bank or trust company located in Birmingham, the said board to have a perpetual existence and its personnel to be appointed in the manner set forth in the said resolution, the following being a true copy of the said resolution:

WHEREAS the campaign for funds now in progress and the financing, construction, equipping and managing of the new Community House offer matters of policy respecting which it is the purpose of the Association to, at all times, protect the property and assets and promote the objects of the Association and perpetually safeguard the supporting and contributing community;

BE IT THEREFORE RESOLVED:

1. That there is hereby created a Board of five Trustees, consisting of a member of the Birmingham Public Library Board, a member of the Birmingham School Board, a member of the Birmingham Community House Board, an officer of the Detroit and Security Trust Company, and an officer of a Birmingham Bank or Trust Company, the first three of whom shall be appointed for three years terms by their respective Boards at such times after the first year as to require an appointment each year for a three year term, and the remaining two of whom

- 2 -

shall be selected and appointed by the said first three; that such Board of Trustees shall have a perpetual existence and no transfer, assignment, conveyance, mortgage or other instrument respecting the real and personal property of the Association shall be valid unless first approved in writing by the said Board of Trustees and a certificate of such approval signed by the Secretary and attested by the President of said Board of Trustees is attached to and made a part of any and all such instruments.

2. That in the event of the dissolution of this Association following the abandonment for any reason of the purpose or purposes for which it was formed as described and named in the Articles of Incorporation and in the by-laws of the Association, then all of its assets of every kind and nature shall, through the said Board of Trustees, be quit claimed and conveyed to whatever charitable and benevolent or educational organization the said Board may by a four-fifths vote select, forever, subject to the payment of all debts and the liquidation of all liabilities.

3. That the said Board of Trustees are hereby directed to organize formally, within thirty days of their appointment, elect officers, adopt by-laws and keep complete and accurate records of all their doings as trustees, whether formally or informally performed.

4. That this Association may delegate further powers and other duties to the said Board of Trustees, but shall not take from them any of the powers and duties herein created.

WHEREAS in pursuance of the foregoing resolution, the Trustees herein were duly appointed and qualified and their successors in the trust shall be duly appointed and qualified; and

WHEREAS by subsequent resolutions regularly adopted by the Settlor, the foregoing resolution was amended or superseded in part, restricting the grantee chosen by the Trustees to a charitable, benevolent or educational organization in the said Village of Birmingham and furthermore authorizing and empowering the Trustees by a four-fifths vote to lease the property of the Settlor for a nominal rental to the said Village of Birmingham or its successor municipality to be used by it for a community center for the benefit of the public; and

WHEREAS all of the property of the Settlor now owned or hereafter acquired by purchase, exchange, gift, endowment or otherwise, shall be subject to the same rights, powers and duties of the Trustees and their successors as herein provided respecting the parcels of property herein described; and

WHEREAS the Settlor did at its last annual meeting authorize, empower and direct the Board of Directors to adopt and approve of the terms of such trust and any instruments made in pur-

- 3 -

suance thereof and this deed of trust having subsequently been approved by the said Board of Directors at a meeting especially called and held for that purpose; and

WHEREAS the Settlor desires to establish a trust upon the conditions and for the uses and purposes herein set forth;

NOW, THEREFORE; that in consideration of the sum of One ($1.00) Dollar to each of the said Trustees in hand paid by the Settlor, the receipt whereof is hereby acknowledged by each of them, and in further consideration of the trust herein contained, the Settlor does by these presents grant, bargain, sell, remise, release and forever quit claim unto the said Rolla J. Coryell, Clarence Vliet, Ruth Shain, Charles Randall and Henry Hart, and to their successors and assigns, FOREVER, All those certain pieces or parcels of land situated in the Village of Birmingham in the County of Oakland and State of Michigan, known and described as follows:

Lots 94, 95 and 96
Merrill Plat;

TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining; TO HAVE AND TO HOLD the same to them and to their successors in the trust and assigns, FOREVER;

IN TRUST, NEVERTHELESS, and to have for the uses, interest and purposes herein described and declared, that is to say:

1. To execute such mortgage or mortgages as the Settlor may secure for paying the cost of any and all buildings erected thereon or for paying the cost of rebuilding the same or building or rebuilding branches or annexes on other locations and for paying on the cost of additions thereto or the cost of major repairs thereon, provided the said Trustees by a four-fifths vote concur in the terms and conditions of such mortgage or mortgages.

2. To execute, acknowledge and deliver a good and sufficient deed of conveyance in pursuance of a resolution by the Settlor authorizing and directing the same for the purpose of erecting, in the pursuance of its purposes, a suitable building on another location, provided the said Trustees by a four-fifth vote

concur in the advisability thereof.

3. To protect the Donors by the use of all reasonable, proper and lawful means against permissive, voluntary, equitable or other waste of the property by the Settlor, its directors, officers, lessees' agents, lessees and licenses, and in such event to take over and assume the control and management thereof as Trustees with the powers herein provided.

4. That in the event of the dissolution of the corporate existence of the Settlor following the abandonment for any reason of the purpose or purposes for which it was formed, then to quit claim and convey the said land and all of the improvements thereon to such charitable, benevolent or educational organization in the said Village of Birmingham or its successor municipality as the said Trustees herein or their elected or appointed successors may by a four-fifths vote determine upon, subject to the payment of all debts and the liquidation of all liabilities or instead thereof and by like four-fifths vote to lease the same for a nominal rental to the said Village of Birmingham or its successor municipality to be used by it for a community center for the benefit of the public, and to otherwise carry into effect all other provisions herein contained.

The Trustees, by joining in the execution of this instrument, hereby accept the said trust and covenant that they will execute the same with all due fidelity; it being understood, however, that the said Trustees and their successors in the trust shall not be held liable or accountable for any mere error of judgment in the execution of the said trust.

That the Trustees or any of their successors in the trust may at any time resign the said trust; that the resignation of death of a trustee or the termination of his term of office shall forthwith be filled by a successor according to the method provided in the aforesaid resolution of the Settlor.

IN WITNESS WHEREOF the said Birmingham Community House Association has caused these presents to be signed in its name by

its Vice-President and its Secretary, and sealed with its Corporate Seal, on the day and year first above written.

BIRMINGHAM COMMUNITY HOUSE ASSOCIATION

In the presence of
*Dorothy Marie Wilson*

*John Smart*

By *Lulu A. W. Wilson*     Vice President

By *Cecil Whalen*    

STATE OF MICHIGAN ) SS
COUNTY OF WAYNE )

On this 16th day of _____ January _____, A. D. before me, a Notary Public, in and for said County, appeared *Lulu A. W. Wilson* and *Cecil Whalen* to me personally known, who being by me duly sworn did each for herself say that they are respectively the Vice-President and Secretary of the Birmingham Community House Association, the corporation named in and which executed the within instrument, and that the seal affixed to said instrument is the Corporate Seal of said corporation and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors; and said *Lulu A. W. Wilson* and *Cecil Whalen* acknowledge said instrument to be the free act and deed of said corporation.

*John Brennan*
Notary Public, Wayne County, Michigan.

My commission expires Sept 3 1933

WE, the undersigned, do hereby accept the trust set forth in the foregoing instrument.

*Rolla J. Coryell*

X *Henry Hart*

*Clarence Vliet*

*Charles Kendall*

*Ruth Shain*

- 6 -

12055

BIRMINGHAM COMMUNITY HOUSE ASSOCIATION

TO

ROLLA J. CORYELL, CLARENCE VLEET, RUTH SHAIN, CHARLES HATHWAY AND HENRY HART  *Trustee*

DEED OF TRUST

*Original*

Register's Office
Oakland County
This instrument was received for record
JAN 30 1930 at 10:35 o'clock A M
and recorded in liber 761
of ____ on page 380-6
____ Register

JOHN E. MARTZ
213 Dime Bank Bldg.

<u>**EXHIBIT 6c**</u>

**QUIT CLAIM DEED**

**AND**

**PROBATE COURT ORDER**

## QUIT CLAIM DEED

KNOW ALL MEN BY THESE PRESENTS: That THOMAS F. SWEENEY, SHELLEY D. ROBERTS and GEOFFREY L. HOCKMAN, as the remaining Trustees of the Trust of the Birmingham Community House Association created on May 7, 1928 by Resolution of the Board of Directors of said Association (hereinafter the "Trust"), whose address is 380 South Bates Street, Birmingham, Michigan 48009, pursuant to and in accordance with the Order entered on August 2, 1989 in the matter entitled In Re Trust of the Birmingham Community House Association Inter Vivos Trust (Oakland County Probate Court File No. 89-198, 645-TI), a certified copy of which Order is attached hereto and recorded herewith, QUIT CLAIM to THE COMMUNITY HOUSE ASSOCIATION, BIRMINGHAM, MICHIGAN (f/k/a Birmingham Community House Association), a Michigan nonprofit corporation, whose address is 380 South Bates Street, Birmingham, Michigan 48009, all of the Trust's legal and equitable interest in the following described premises situated in the City of Birmingham, County of Oakland and State of Michigan:

Lots 94, 95, 96, 85, 86, 87, 88, 89 and 90 of "Merrill's Plat", as recorded in Liber 3 of Plats, Page 3, Oakland County Records.

Together With any and all other real and personal property and assets of the Trust, wherever located, and Subject To the terms and conditions of the Order attached hereto and all covenants, conditions, easements and restrictions of record including, but not limited to, the Deed of Trust dated January 16, 1930 and recorded in Liber 761, Pages 380 through 385, inclusive, Oakland County Records.

For the sum of NO CONSIDERATION.

This instrument is exempt from transfer tax pursuant to MCLA 207.505(a).

Dated this 24th day of April, 1990.

Witnesses:                              Signed and Sealed by:

_Robert R. Maxwell_                     _Thomas F. Sweeney_
Robert R. Maxwell                       Thomas F. Sweeney, Trustee

_Katherine A. St. Pierre_               _Shelley D. Roberts_
Katherine A. St. Pierre                 Shelley D. Roberts, Trustee

                                        _Geoffrey L. Hockman_
                                        Geoffrey L. Hockman, Trustee

STATE OF MICHIGAN )
                 ) ss.                                      O.K. — LM
COUNTY OF OAKLAND )

The foregoing instrument was acknowledged before me this 24th day of April, 1990 by Thomas F. Sweeney, Shelley D. Roberts and Geoffrey L. Hockman, as remaining Trustees of the Trust of The Birmingham Community House Association created on May 7, 1928, and not individually.

_Robert R. Maxwell_
Robert R. Maxwell
Notary Public
Oakland County, Michigan 3/2/95
My Commission expires: _____

[Notary stamp:
ROBERT R. MAXWELL
NOTARY PUBLIC STATE OF MICHIGAN
OAKLAND COUNTY
MY COMMISSION EXPIRES MAR. 2 1995]

DRAFTED BY AND
WHEN RECORDED RETURN TO:

Robert R. Maxwell
Hough, Potter, Sweeney & Brenner
3100 Guardian Building
Detroit, MI  48226

TAX PARCEL NUMBERS:
19-36-132-001
19-36-132-002
19-36-132-003
19-36-132-004

STATE OF MICHIGAN

IN THE OAKLAND COUNTY PROBATE COURT

In Re

TRUST OF THE BIRMINGHAM COMMUNITY
HOUSE ASSOCIATION, Inter vivos Trust
#89-198,645-I

ORDER TERMINATING THE TRUST
OF THE BIRMINGHAM COMMUNITY HOUSE
ASSOCIATION AND DISTRIBUTING ITS
ASSETS TO THE COMMUNITY HOUSE
ASSOCIATION, BIRMINGHAM, MICHIGAN,
A MICHIGAN NONPROFIT CORPORATION

At a session of said Court, held in
the Oakland County Courthouse located
in the City of Pontiac, County of
Oakland, State of Michigan on
August 2, 1989

PRESENT: HON. BARRY M. GRANT
Probate Court Judge

The Petition to Terminate the Trust of the Birmingham Community House Association and to distribute its assets to The Community House Association, Birmingham, Michigan, a Michigan nonprofit corporation, with attached exhibits and Memorandum of Law having been filed herein by The Community House Association, Birmingham, Michigan and by Thomas F. Sweeney, Shelley D. Roberts and Geoffrey L. Hockman, the three presently appointed and acting members of the five member Board of Trustees of the Trust of the Birmingham Community House Association, and

HOUGHTON, POTTER,
SWEENEY & BRENNER
LAWYERS & COUNSELORS
PROFESSIONAL CORPORATION
1563 ADAMS ST BUILDING
DETROIT, MICHIGAN 48226
───
(313) 964-0050

FILED Aug. 3, A.D. 19 89

Kathryn A. Flemmz
Deputy Register of Probate

I certify that I have compared this copy on which this certificate is affixed with the original instrument ... that said copy is a correct copy of the whole thereof.

Date this ___ day of ___

_____
Register of Probate
Oakland County, Pontiac, Michigan

By _____
Deputy Register

The consent of the Michigan Attorney General to the requested relief having been filed herein, and the Court being fully advised in the premises,

The Court hereby determines as follows:

1. The Trust of The Birmingham Community House Association has become dormant and inactive, its activation would be wasteful of available resources, and the purpose of the trust has become impossible, impractical and inexpedient to carry out so that another charitable entity carrying out the same purpose should be substituted in its place.

2. The purpose of the settlor in establishing the trust can be best carried out by The Community House Association, Birmingham, Michigan, a Michigan nonprofit corporation, which is the sole beneficiary of the Trust of the Birmingham Community House Association and presently is subject to the registration and annual report requirements of the Michigan Attorney General, and presently is qualified as a 501(c)(3) charity under the Internal Revenue Code and has effectively acted as the owner of the real estate held by the trust for nearly 60 years.

Now, Therefore, It Is Hereby Ordered As Follows:

1. That the Trust of the Birmingham Community House Association created on May 7, 1926 be terminated effective immediately and that after conveying title to the trust assets to The Community House Association, Birmingham, Michigan, the

HOUGHTON, POTTER
SWEENEY & BRENNER
ATTORNEYS & COUNSELORS
PROFESSIONAL CORPORATION
1002 JORDAN BUILDING
DETROIT, MICHIGAN 48226
———
(313) 964-0090

- 2 -

now acting Trustees thereof be discharged of any further responsibility in connection with said Trust.

2. That the remaining Trustees of the Trust of the Birmingham Community House Association transfer all of the Trust's legal and equitable interest in Lots 94, 95, 96, 85, 86, 87, 88, 89 and 90 of Merrill's Plat, Birmingham, Oakland County, to The Community House Association, Birmingham, Michigan, a Michigan nonprofit corporation.

3. That The Community House Association, Birmingham, Michigan, hold said premises in accordance with the terms and conditions of the Deed of Trust dated January 16, 1930 and recorded in Liber 761, Pages 380 - 385, Oakland County Records, including the condition that in the event of the dissolution of the corporate existence of The Community House Association, Birmingham, Michigan, a Michigan nonprofit corporation, following the abandonment for any reason of the purpose or purposes for which it was formed, then to quit claim and convey the said land and all of the improvements thereon to such charitable, benevolent or educational organization in the City of Birmingham, or its successor municipality, as the Board of Directors of the Community House Association, Birmingham, Michigan, may by a four-fifths vote determined upon, subject to the payment of all debts and the liquidation of all liabilities or instead thereof and by like four-fifths to vote to lease the same for nominal rental to the City of Birmingham or its

HOUGHTON, POTTER,
WEENEY & BRENNER
ATTORNEYS & COUNSELORS
PROFESSIONAL CORPORATION
1155 GUARDIAN BUILDING
DETROIT, MICHIGAN 48226

(313) 964-0050

- 3 -

successor municipality to be used by and for a community center for the benefit of the public and to otherwise carry into to effect all of the provisions of said Deed of Trust.

August 2 1989
DATE OF ENTRY OF ORDER

PROBATE COURT JUDGE
BARRY M. GRANT

HOUGHTON, POTTER
WEENEY & BRENNER
ATTORNEYS & COUNSELORS
PROFESSIONAL CORPORATION
3300 GUARDIAN BUILDING
DETROIT MICHIGAN 48226

(313) 964-0050

- 4 -