UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                    Case No. 26-43351

THE COMMUNITY HOUSE ASSOCIATION,                          Chapter 11
BIRMINGHAM, MICHIGAN,
                                                          Judge Thomas J. Tucker
                        Debtor.
_____/

**OPINION REGARDING THE DEBTOR'S SALE MOTION**

This case is before the Court on the Debtor's motion, entitled "Debtor's Motion for Entry

of Order Authorizing The Sale of Debtor's Property Free And Clear of All Liens, Claims,

Encumbrances, And Interests (But Subject To Permitted Exceptions) And For Certain Related

Relief" (Docket # 65, the "Sale Motion" or the "Motion").  In the Sale Motion, the Debtor seeks

authority, under 11 U.S.C. §§ 363(b)(1) and 363(f), to sell its real property and certain related

property, located at 380 S. Bates in Birmingham, Michigan (the "Property"), to the City of

Birmingham, under the terms of a purchase agreement.[1]

Neither the United States Trustee nor the Subchapter V Trustee objected to the Motion.

And no creditors objected to the Motion.  The only objection to the Motion was filed by an

unsuccessful bidder, the Julie and Mark Pulte Charitable Foundation ("Pulte") (Docket # 77).

The Court held a lengthy hearing on the Sale Motion on June 17, 2026, and then took the

Motion under advisement.  The Court has considered all of the papers filed by everyone

concerning the Sale Motion, and has considered all of the written and oral arguments made

regarding the Motion.  For the reasons stated below, the Court will grant the Sale Motion.

---

[1]  A copy of the purchase agreement, entitled "Real Estate Purchase Agreement," is attached as
Exhibit 6a to the Sale Motion.

The Court finds and concludes as follows.

1. Pulte lacks standing to object to the Sale Motion. It is not a creditor in this bankruptcy case. Its only connection to this case is that it is an unsuccessful bidder for the sale of the Debtor's Property. Shortly before the Debtor agreed to sell the Property to the City of Birmingham (the "City"), Pulte offered to buy the Property for $4.5 million, and then told the Debtor's President that it would not increase its offer. The Debtor decided not to accept Pulte's offer, and instead the Debtor agreed to sell the Property to the City, for $5.2 million. After the Debtor made its agreement with the City, Pulte increased its offer to $5.5 million, but the Debtor decided not to accept that offer, having already accepted the City's offer, and instead the Debtor filed the Sale Motion, seeking authority from this Court to sell the Property to the City.

2. The rule in the Sixth Circuit is that, with only a limited exception, an unsuccessful bidder lacks standing to object to a bankruptcy debtor's sale of property. *See In re Squire*, 282 Fed. App'x. 413, 416 (6th Cir. 2008). "An exception exists where an unsuccessful bidder challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness[.]" *Id.* (citations omitted).

3. In this case, the intrinsic structure of the Debtor's proposed sale to the City is not "tainted by fraud" or by "mistake," and counsel for Pulte acknowledged this during the hearing. Nor is the intrinsic structure of the proposed sale "tainted by . . . unfairness." Pulte argues otherwise, but points only to the following reasons in support of its "unfairness" argument: (a) that after Pulte made its $4.5 million offer and indicated to the Debtor that it would not offer more, the Debtor failed to make a counteroffer, and the Debtor failed to make Pulte aware of the City's $5.2 million offer before entering the purchase agreement with the City; and (b) that the

City has implied that it will object to and litigate against a sale to any buyer other than the City, to try to block the sale, based on certain deed restrictions applicable to the Property.[2]

4. As for Pulte's first point, there is nothing unfair about what the Debtor did and did not do in its dealings with Pulte.

5. As for Pulte's second point, there is nothing unfair about the City's position or its conduct with respect to the proposed sale. The City has not stated that it will object to, and litigate against, a sale to any buyer other than itself, nor has the City implied that. The City has stated that it objects to a sale *to Pulte*, for stated reasons,[3] and the City indicates that it would litigate with the Debtor and Pulte in support of such an objection, based on the deed restrictions, if the Court does not approve the sale to the City. But the Court finds that the City's position about the deed restrictions, as described in the City's brief and by its counsel during the hearing, is at least colorable, and is not made in bad faith.

6. As a result of the foregoing, Pulte lacks standing to object to the Sale Motion, and its objection must be overruled for that reason alone.

7. Nonetheless, the Court has considered the facts alleged and the arguments made by Pulte, along with the facts and arguments presented by the Debtor and the City, in making the Court's own independent assessment of whether the Sale Motion meets the standards necessary for this Court's approval.

---

[2] The deed restrictions at issue have been in place since 1930. *See* Exs. 6b and 6c to the Sale Motion. In the City's view, the deed restrictions limit the use of, and any possible sale of, the Property in ways that prevent the Debtor from selling the Property to Pulte, among other possible buyers. Pulte disagrees. Before the Debtor filed this bankruptcy case on March 26, 2026, the Debtor and the City were engaged in a lawsuit over the deed restrictions that the City filed on November 25, 2025 in the Oakland County Circuit Court. *See* Sale Motion at ¶ 22. That lawsuit has been stayed by the automatic stay.

[3] The City stated these reasons during the hearing, and in the written response it filed to the Sale Motion. *See* "City of Birmingham's Resp. . . ." (Docket # 84) at 6-9.

8.  The Court finds and concludes that the Sale Motion does meet the necessary standards. The proposed sale is permitted under 11 U.S.C. § 363(b)(1), because the Debtor has shown that a "good" and "sound business reason" justifies the Debtor's sale of the Property to the City, on the terms proposed by the Motion.  *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986) (citing *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983)).

9.  It is clear, and undisputed, that the Debtor's proposed sale to the City will pay the Debtor enough money to pay in full the allowed claims of all secured and unsecured creditors in this bankruptcy case, and all allowed administrative claims, and still leave a substantial surplus to the Debtor.  Based on the record in this case,[4] the Court estimates that the surplus to the Debtor, after all claims are paid, most likely will be at least $2.5 million, and possibly more.  And the Debtor is likely to obtain the proceeds from the proposed sale very soon, since the Debtor's purchase agreement with the City requires that a closing occur on or before June 30, 2026.

10.  Given the foregoing, it is clear that the proposed sale is very much in the best interest of the creditors and the bankruptcy estate in this case.

11.  The proposed sale also is in the best interest of the Debtor.  In this case, the Court gives some deference to the Debtor's business judgment that the sale is in the Debtor's own best interest.  *See, e.g.*, *In re 160 Royal Palm, LLC*, 600 B.R. 119, 126 (S.D. Fla. 2019) ("'A debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.' *In re SW Boston Hotel Venture, LLC*, 2010 WL 3396863, at *3.").  This is

---

[4]  Such record includes Schedule D and amended Schedule E/F filed by the Debtor, the proofs of claim filed to date, as shown in the Claims Register for this case, and information provided by the parties during the hearing.

especially so in a case such as this, where all creditors and all administrative expenses will be paid from the proceeds of the proposed sale.

12. The factors that support the Debtor's business judgment, that the proposed sale to the City, on the proposed terms, is in the Debtor's best interest, include the following:

a. Absent the proposed sale to the City, the Debtor will run out of money to operate or pay its expenses, on or immediately after June 30, 2026. The Debtor has repeatedly emphasized this fact from the beginning of this bankruptcy case, and in support of the Sale Motion, and no one disputes it.

b. The sale proposed by the Sale Motion will be on terms that will settle all legal disputes and litigation between the Debtor and the City, including the pending state court lawsuit filed in November 2025 by the City, which primarily concerns the meaning and effect of the deed restrictions applicable to the Property.

c. Absent a sale of the Property, the Debtor has and will have no money to pay for continued litigation, either in state court or in this Court, with the City over the deed restrictions and the Property.

d. Pulte stated during the hearing, through its counsel, that it is willing to close on, and pay for, its purchase of the Property subject to the deed restrictions, and thereby assume the risk that the City would then seek to invalidate Pulte's purchase of the Property, based on the deed restrictions. But the Court concludes that it could not authorize the sale of the Property to Pulte on those terms. Rather, before this Court could authorize such a sale to Pulte, under 11 U.S.C. § 363(b)(1), this Court, or the state court in the pending lawsuit, first would have to decide whether the deed restrictions prevent a valid sale of the Property to Pulte under state law.

e. The outcome of continued litigation about the deed restrictions is uncertain, and if the City were to prevail in such litigation, the Debtor would be unable to sell the Property to Pulte, and might then be forced, as a practical matter, to sell the Property to the City, at a much later time than June 30, 2026, and possibly for a purchase price and/or on terms less favorable than those now proposed in the Sale Motion.

f. But in any event, the Debtor has neither the time or the money to litigate the deed restriction issues to conclusion. The Debtor runs out of money on June 30, 2026, and does not and will not have the money to litigate the deed restriction issues.

g. Pulte argues that its offer to purchase the Property is higher and better than the City's offer. Pulte's latest offer is for a purchase price of $5.5 million, with no requirement that the Debtor split the endowment (the "Endowment") that is held and controlled by The Community Foundation for Southeast Michigan. The Debtor is a beneficiary of that Endowment, which the parties estimate has a total value of approximately $1.6 million. Under the proposed sale to the City, the purchase price is $5.2 million, with the Debtor required to essentially divide the beneficiary status in the Endowment with the City on a 50/50 basis (or give the City the financial equivalent, by a credit against the purchase price, of roughly $800,000).

h. In comparing the value of the Pulte offer to the City's offer, the Debtor has made the business judgment that the Pulte offer is not *better* than the City's offer. The Court finds that business judgment to be sound, based on the factors listed in subparagraphs a - f, above.

13. Pulte argues that the Debtor should seek to obtain the financial benefit of its higher offer, because that would be in the best interests of future beneficiaries of the Debtor's charitable donations. While this rather nebulous concern is not unimportant, the Debtor is the proper

steward of its resources for those future beneficiaries, and the better party to judge what is in the best interests of future beneficiaries, not Pulte, and not this bankruptcy court.

14. Under the circumstances, the Court finds and concludes that the sale price, and all the other terms of the Debtor's proposed sale to the City, as described in the Sale Motion and its exhibits, are fair and reasonable, and reflect the good and sound business judgment of the Debtor.

15. Based on 11 U.S.C. § 363(f), including §§ 363(f)(2) and 363(f)(3), the extent to which the Sale Motion seeks to sell the Property free and clear of liens and encumbrances is permitted, and will be approved.

16. The City is a good faith purchaser of the Property, and therefore is entitled to the protection of 11 U.S.C. § 363(m).

17. There is no basis apparent to the Court upon which the proposed sale of the Property could later be avoided under 11 U.S.C. § 363(n).

18. For the reasons stated in this Opinion, the Court will grant the Sale Motion, by separate order. The Debtor should immediately submit to the Court the proposed order that was attached as Exhibit 1 to the Sale Motion, and the Court waives any further presentment of that order. The Court intends to make non-substantive revisions to that proposed order, but will not make any substantive changes to it, and will enter the revised order promptly.

**Signed on June 18, 2026**



/s/ Thomas J. Tucker

**Thomas J. Tucker**
**United States Bankruptcy Judge**